2009 Ark. 543

**JUDICIAL DISCIPLINE AND DISABILITY COMMISSION,** Petitioner,

v.

**L.T. SIMES, Respondent.**

No. 09–443.

Supreme Court of Arkansas.

Nov. 5, 2009.

David A. Stewart, Executive Director, and David J. Sachar, Deputy Executive Director, Ark. Judicial Discipline & Disability Comm'n, Little Rock, for appellant.

George E. Hairston, New York, NY, Terrence Cain, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

The Judicial Discipline and Disability Commission ("the Commission") recommends that this court permanently remove Judge L.T. Simes from the bench without the possibility of returning to that position by election or appointment. The Commission bases this recommendation on its findings that Judge Simes violated (1) Canon 4(G) of the Code of Judicial Conduct by engaging in the practice of law while he was a circuit judge; (2) Canon 4(E) by serving as a fiduciary of an estate of someone other than a family member; and (3)

Canon 2 by failing to avoid impropriety or the appearance of impropriety. We hold that the findings of the Commission are not clearly erroneous, but we reject the recommendation of removal. We suspend Judge Simes from the bench, without pay, until the end of his current term, which is December 31, 2010. We further deny Judge Simes's motion to strike extraneous material from the record.

The facts are these. On January 14, 1976, L.T. Simes filed a petition as the attorney of Lazora Corbin to have an administrator appointed for the estate of her father, Quincy Chandler. He next filed an acceptance of appointment as administrator, and on March 19, 1976, by order of the probate court, he was permitted to serve as the administrator of the Chandler Estate without bond. One of the assets of the estate was a tract of farm land, which was leased to a third party. On July 18, 1986, an order was entered by the probate court, directing that all farm rental income of the Chandler Estate be paid to attorney Simes, as administrator of the estate. Judge Simes now contends that he received the first annual rental payment in 1989.[1] Fourteen years after attorney Simes became administrator of and attorney for the estate, in July 1990, he received a letter from Lazora Corbin, which said, "You are here by [sic] discharged as my attorney on July 9, 1990." The letter also asked him to "deliver" the legal file to attorney Charles Allen. According to

Judge Simes, he then sent a copy of the file to Mr. Allen.

After July 9, 1990, Simes, both as attorney and after he became judge, continued to receive rental payments in connection with the Chandler Estate and never moved the court to be removed as administrator of or the attorney for the estate.[2] In January 1997, after having been duly elected circuit judge on November 5, 1996, Judge Simes assumed the bench as a full-time judge for the First Judicial Circuit. After becoming a judge, he still did not take action to remove himself as the administrator of the Chandler Estate or to remove himself as attorney of record for either Lazora Corbin or the estate. He continued to receive annual rent checks, but he filed no accounting for the checks received as part of the probate administration.[3]

On February 23, 1998, Judge Simes sent a letter to Linda White, the Phillips County Clerk, which stated:

Enclosed herein you will find check #5603 in the amount of $1440.00 dated November 7, 1997. Do you have an account in your office where this money can be kept and distributed according to a Chancery Court order? As you are aware, I no longer practice law. My last notion was that Charles Allen represented the estate. Please check your files and see who the attorney is and a copy of this pleading can be sent to them as well. If you have any further questions, please feel free to call.

1. In an order entered October 31, 1988, the probate judge considered a contempt motion filed by attorney Simes against the lessee. The probate judge referred to Simes as the "Administrator and as attorney for the Estate."

2. According to the record, attorney Simes sent at least two letters to Mr. Allen, on December 17, 1993 and January 4, 1995. He said that he wanted Mr. Allen to enter an

order relieving him as counsel in the case and to pay his attorney's fees. There is no evidence that either Mr. Allen or Judge Simes ever submitted an order to that effect to the probate court.

3. This was a finding in a consent order before the Supreme Court Committee on Professional Conduct, entered on September 12, 2006.

Ms. White responded to Judge Simes on March 25, 1998, answering, in part:

> We did not find an account for this money to be kept and distributed by a Chancery Court Order. Also, I spoke with Charles Allen to see if he had handled this case and he told me he had not. The only other attorney I could find who signed off on any paperwork was Eddie Schieffler who was a court-appointed attorney for John Chandler.
>
> Please find enclosed the letter and check you mailed to our office. If there is anything we need to do that I am not aware of please let me know.

The record does not reflect that Judge Simes took any further action to resolve the matter of who represented the estate upon receiving Ms. White's correspondence.

In January 2003, attorney Jesse Daggett, who had been retained by the heirs of the Chandler Estate, contacted Judge Simes and requested an accounting of the annual farm rental payments. On May 11, 2004, the heirs of the Chandler Estate petitioned Judge Kathleen Bell for an accounting and to have Arnold Chandler appointed as administrator of the estate. Thereafter, Judge Bell ordered Judge Simes to file a final accounting for the estate by October 29, 2004, for the period from March 18, 1976 to date. Judge Simes did not file the accounting as ordered. Judge Bell also discharged Judge Simes as administrator and appointed Arnold Chandler as Administrator in Succession of the estate.

On November 18, 2004, Judge Bell recused, and Special Judge W.H. "Dub" Arnold was appointed to decide the case.

Judge Arnold held a hearing on September 29, 2005 with respect to the motion for accounting filed by Daggett on behalf of the estate. Judge Simes and Mr. Daggett each made a statement at the hearing, and Arnold Chandler testified. On October 10, 2005, Judge Simes filed a Petition for Attorney's Fees and Executor's Fees before Judge Arnold, seeking payment of $13,940.77, to cover his claimed service to the estate as both administrator and lawyer from January 1976 through March 1998. The fees claimed by Judge Simes for work done in 1998 as administrator and attorney, after he assumed the bench, included the letter to Linda White, Probate Clerk, on February 23, 1998; a letter from Connie Smith, Deputy Probate Clerk, on March 25, 1998; and a conversation with attorney Charles Allen on March 25, 1998.

Following the hearing, Judge Arnold entered an order dated October 25, 2005, and concluded that Judge Simes had breached his fiduciary duty to the estate and that he owed the estate a total of $24,138.03, inclusive of interest, for the rent payments he had collected and failed to disburse to the heirs. Judge Simes paid the judgment. Judge Arnold's order also denied the petition for attorney's and administrator's fees and found that Judge Simes had violated various Rules of Professional Conduct.[4] Judge Arnold also noted that Judge Simes had failed to comply with Judge Bell's 2004 order that he file a final accounting for the estate. Judge Simes did not appeal Judge Arnold's order.

On October 27, 2005, Judge Arnold referred Judge Simes to the Arkansas Supreme Court Committee on Professional Conduct (CPC), by letter and attached a copy of his order to the letter.[5] On Sep-

---

4. Rule 1.3 (diligence), 1.4(a) (keeping the client reasonably informed), and 1.4(c) (notifying the client of his receipt of funds to which the client is entitled).

5. On October 31, 2005, Stark Ligon, Executive Director of the CPC, forwarded Judge Arnold's letter and order to the Commission "for whatever action [it] deems appropriate."

tember 12, 2006, a Consent Findings and Order was entered by the CPC and agreed to by Judge Simes, wherein Judge Simes was cautioned by the CPC for violating various Rules of Professional Conduct and was ordered to pay restitution to the Chandler Estate in the amount of $2,122.99 for attorney's fees incurred. That consent order provided in part that: "Judge Simes' conduct, as an attorney, violated Model Rule 1.15(b), in that he failed to promptly deliver to the Estate of Quincy Chandler the funds represented by three rental checks for the years 1997, 2000 and 2002."

On March 16, 2006, Ashley Higgins, an attorney in Helena, sent a letter to the Commission regarding Judge Simes's involvement in the Chandler Estate. Mr. Higgins included the October 25, 2005 order entered by Judge Arnold. The Commission assigned case number 06–174 to the complaint, and, on March 27, 2006, it sent a letter to Mr. Higgins, acknowledging receipt of his complaint, and to Judge Simes, informing him of the complaint and inviting his response within 30 days. After various delays and continuances, a three-person panel of the Commission held a disciplinary hearing on the Higgins complaint on January 16, 2009, and February 18, 2009. Following the hearing, the panel issued a report and recommendations on March 13, 2009, in which it recommended that Judge Simes be permanently removed from the bench. On April 28, 2009, the full Commission entered a unanimous final decision in which it adopted the findings and recommendation of the panel. That recommendation of the full Commission is now before this court for final decision.

In *Judicial Discipline and Disability Commission v. Thompson,* this court stated the standard of review for judicial-discipline cases. 341 Ark. 253, 262, 16 S.W.3d 212, 215 (2000). This court conducts a de novo review, and, after a review of the entire record, we may accept, reject, or modify, in whole or in part, the Commission's findings and recommendations. *Id.* This court, however, will not reverse the Commission's findings unless they are clearly erroneous. *Id.*

### I. *Practice of Law*

We turn first to the question of whether Judge Simes practiced law while he was on the bench. The Commission concluded that Judge Simes's conduct violated Canon 4(G), which restricts a presiding judge from practicing law or appearing as counsel in any court in this state. The Commission made the following specific findings in support of its conclusion:

- Rental payments from the Chandler Estate continued to be made to Judge Simes long after he assumed his role as Circuit Judge.

- Subsequent to assuming his position as Circuit Judge, Judge Simes claimed monies owed to him for attorney's fees and for executor's fees from the Chandler Estate.

- The letter Judge Simes received from Lazora Corbin did not serve to release him from his obligations as the attorney for and the administrator of the Chandler Estate. Judge Simes either knew, or should have known, that it did not do so.

- Judge Simes appeared as counsel in a court of this state during the time he was serving as a circuit judge.

Judge Simes now argues to this court that there is no evidence in the record to support the finding that he practiced law in violation of Canon 4(G). Instead, Judge Simes asserts that he was in a no-win situation and that if he had petitioned a court to withdraw as counsel for the Chan-

dler Estate, he would have, in fact, been practicing law in violation of Canon 4(G).

The answer to this question centers on what constitutes the practice of law and Judge Simes's actions. In *Thompson,* this court emphasized that "the practice of law is not confined to services by an attorney in a court of justice; it also includes any service of a legal nature rendered outside of courts and unrelated to matters pending in the courts." 341 Ark. at 263, 16 S.W.3d at 216 (citing *Undem v. State Bd. of Law Exam'rs,* 266 Ark. 683, 587 S.W.2d 563 (1979)). In *Thompson,* this court accepted the Commission's finding that then-Judge Thompson had engaged in the practice of law where the evidence showed he actively participated in settlement negotiations on behalf of clients he represented before he became a circuit judge.

Judge Simes asserts that the Commission's findings in the instant case are clearly erroneous because there is no evidence that he actively did anything that could be defined as practicing law. He contends that the Commission found he practiced law based on what he did not do, which was he failed to withdraw as the attorney of record in the case. The Commission answers that the 1990 letter from Lazora Corbin did not serve to terminate Judge Simes's responsibilities as her attorney and that he, in fact, continued to perform attorney functions for the estate after the letter was received. The Commission points to the evidence in the record that Judge Simes continued to receive rental payments intended for the estate after he became a circuit judge. The Commission also cites the consent order from the CPC, which Judge Simes agreed to, as evidence that Judge Simes admitted he engaged in the practice of law while he was a judge.

That order said that he was acting as an attorney in 1997, 2000, and 2002 when he received farm rental checks and neglected to deliver them to the estate.

There is no doubt that the judge's actions in *Thompson* on the practicing-law question were more egregious than Judge Simes's actions in the Chandler Estate, but even so, the Commission's finding that Judge Simes engaged in the practice of law, and thereby violated Canon 4(G), is not clearly erroneous. According to Judge Simes, he was unable to withdraw as counsel for Lazora Corbin or as attorney for the estate because he would violate Canon 4(G) by moving a court to be relieved. Clearly, though, his withdrawal as counsel for all parties and an order granting that withdrawal should have transpired before he assumed the bench.

It is conceivable that some judges might inadvertently remain listed as the attorney of record on a case after they become a sitting judge and that merely overlooking the fact would not constitute the practice of law. In this case, however, Judge Simes remained attorney of record and knowingly continued to receive rent checks on behalf of the estate after he was sworn in as a judge. He also had correspondence with the probate clerks in February and March 1998 about his role and the rental checks, and later attempted to bill the estate for those services. Additionally, he worked actively with the estate's new attorney, Jesse Daggett, to construct an accounting of the estate for the years before and after he assumed the bench, and he petitioned Judge Arnold for attorney's fees as well as administrator's fees for services provided to the estate from January 1976 through March 1998, which was over a year after he became a circuit judge.[6]

6. At the hearing before Judge Arnold on September 29, 2005, Judge Simes told the court

that he and Daggett had "worked pretty hard

Judge Simes's petition for fees further supports the Commission's finding that he appeared before a court, as counsel, while he was a sitting judge.

While admittedly Judge Simes's roles as attorney for and administrator of the estate appear to have blurred at times, based on the documentation, orders, and judgments before this court, it is clear that he wore both hats after he assumed the bench. His actions went beyond mere inadvertence or inaction. The facts, accordingly, support the Commission's finding that Judge Simes violated Canon 4(G) and engaged in the practice of law.

## II. *Service as a Fiduciary*

Judge Simes also claims that the Commission clearly erred in finding that he served as a fiduciary to the Chandler Estate while he was a judge. The Commission's specific findings on this point were:

- Judge Simes was appointed as the administrator of the Chandler Estate on January 14, 1976, and served as administrator of that estate until discharged by Order of the Circuit Court of Phillips County, Arkansas, dated the 20th day of May, 2004.
- Judge Simes took no steps to have himself removed as the administrator of the Chandler Estate upon assuming the position of Circuit Judge.
- Judge Bell ordered Judge Simes to file a final accounting of the estate in 2004, which he did not do.
- After he assumed the bench, Judge Simes claimed the estate owed him money for administrator's fees.
- Judge Simes served as the administrator of an estate of a decedent not a member of the Judge's family during

and long to try to find everything and account

the time that he was serving as a Circuit Judge.

- The conduct of Judge Simes violates Canon Four E restricting a judge from serving in a fiduciary capacity.

Judge Simes's rebuttal to the Commission's findings on this point is essentially the same as he made with respect to Canon 4(G) regarding the practice of law. He maintains that he could not take steps to be removed as administrator of the estate without practicing law in violation of Canon 4(G). He also contends that the Commission's finding that he served in a fiduciary capacity is supported only by evidence that he failed to perform any duties he may have owed the estate as a fiduciary.

As with the Canon 4(G) issue, Judge Simes's argument and the arguments of the dissent are unpersuasive on this point. The fact that he was negligent or inadequate in performing his duties as administrator of the estate does not change the fact that he continued to be the court-ordered administrator of the Chandler Estate after he became a circuit judge. Also, as already mentioned, he received rent payments, filed them away, and then requested fees as the administrator after he took the bench. The Commission's findings on this point are not clearly erroneous.

The dissent argues that Judge Simes, after assuming the bench, was only imprudent and unprofessional when he received the Chandler Estate rental checks and filed them away without distribution. The dissent further advocates that Judge Simes's actions were merely negligent acts and did not constitute a service to the estate as either lawyer or administrator. We disagree. The acts of receiving multiple rental checks on behalf of the estate

for everything."

while on the bench and then filing them in some fashion were actions taken in Judge Simes's dual roles as attorney and fiduciary. His imperfect subsequent performance with regard to the checks cannot operate as a defense to his initial receipt and filing of the checks. Nor can we agree that Judge Simes did not appreciate the fact that he was acting as both lawyer and administrator for the estate. Judge Simes manifestly recognized that he was acting in both roles when he petitioned Judge Arnold for fees for acts done in both capacities.

### III. *Appearance of Impropriety*

■ The Commission further found that Judge Simes violated Canon 2's requirement that he "avoid impropriety and the appearance of impropriety in all the judge's activities." First, Judge Simes does not address this finding in his initial brief, although he does take issue with the finding in his reply brief.

Canon 2 provides that "a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The commentary to Canon 2 further reads:

> Actual improprieties under this standard include violations of the law, court rules or *other specific provisions of this code.* The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.

(Emphasis added.) Because we have followed the Commission's recommendations with respect to the Canon 4(E) and 4(G) violations to the effect that there was actual impropriety on the part of Judge Simes, we accept the Commission's recommendation with respect to Canon 2 as well. In

addition, as a result of Judge Simes's actions, the Chandler Estate was inadequately represented for many years, the heirs of the estate were forced to take legal action against Judge Simes, and Judge Simes was ordered to pay a substantial amount of money, including interest, to the estate for the rental checks that he mishandled. These facts, without question, created the appearance, in reasonable minds, that Judge Simes was unable to perform his duties with integrity, impartiality, and competence.

### IV. *Due Process*

#### A. Rule 8(D) Violation

■ Judge Simes strongly asserts that his procedural and substantive due-process rights were violated because the Commission failed to comply with its own rules by not notifying him within 90 days of receipt of the first complaint made against him on the Chandler Estate. Judge Simes specifically maintains that there were multiple complaints with respect to his involvement in the Chandler Estate before Ashley Higgins's letter was received by the Commission in March 2006. Judge Simes also adds that Commission staff "opened an investigation and monitored the proceedings before Judge Bell and Judge Arnold, as attorneys practicing in the First Judicial Circuit continued to file complaints on the Chandler matter."

■ As Judge Simes rightly notes, state judges have protected due-process rights, the basic components of which are fairness, meaningful notice of charges, and a meaningful opportunity to defend oneself. *See Anderson v. State,* 266 Ark. 192, 583 S.W.2d 14 (1979). According to Judge Simes, the Commission's actions in the instant case violated his due-process rights and its own Rule 8, which in 2006 read, in part:

*Mandatory Notice to the Judge.* Except upon good cause shown and with the approval of the Commission, no action other than dismissal of the complaint shall be taken as to any complaint about which the judge is not notified within ninety (90) days of the receipt of such complaint.

Ark. Discipline & Disability R. 8(D) (2006) (amended on March 13, 2008, to delete the 90–day requirement).

On this point, Judge Simes claims that the Commission received complaints regarding the Chandler Estate in May 2004 from Attorney Charles Halbert in reference to case 04–206; in January 2005 from Attorney Murray; in October 2005 from Stark Ligon; and on March 20, 2006 from Higgins.[7]

The Commission concedes the following in its brief before this court:

- It received information concerning Judge Simes's conduct in the matter of the Chandler Estate prior to the filing of the formal complaint, including correspondence from Stark Ligon.
- Its investigator, Lance Womack, made "preliminary inquiries concerning this matter when information concerning the Judge's continuing involvement with the estate was disclosed during other investigations. Womack interviewed Jesse Daggett, the attorney hired by the Chandler family.
- As part of an investigation into another complaint filed by Todd Murray, it contacted Judge Bell concerning the Chandler Estate. The Commission sent a letter to Judge Bell inquiring into the status of the estate and requesting a copy of the final accounting Judge Simes was ordered to make.

The Commission contends, however, that it was "simply involved in the investigation of information or inferences before opening a case against Judge Simes, reflecting [its] obligation not to proceed with the disciplinary process without proper investigation and evaluation of the information forwarded to it."

The question for this court to decide is whether the information brought to the attention of the Commission before the Higgins letter were "complaints," which resulted in "action" within the meaning of former Rule 8(D). If so, Judge Simes maintains that he received no notice of such complaints by the Commission within ninety days, and, thus, the complaints must be dismissed. The Rules do not define "complaint," but reference "any information submitted by a complainant or otherwise brought to the attention of the Commission." Ark. Jud. Discipline & Disability Comm'n R. 8(A). Former Rule 8(C) was titled "Optional Notice to the Judge" and provided that "[n]otice to the judge that a complaint has been received or an inquiry undertaken may be given at any time." Ark. Jud. Discipline & Disability Comm'n R. 8(C) (2006).

On February 22, 2005, Charles Halbert wrote a letter to the Commission complain-

---

7. There does not appear to be anything in the record that Charles Halbert made a complaint regarding the Chandler Estate in connection with case 04–206 in 2004. However, Mr. Halbert did reference Judge Simes's involvement in the Chandler Estate in a letter dated February 22, 2005, which primarily related to a different disciplinary action, case 05–123. Lance Womack, an investigator for the Commission testified in the disciplinary hearing in the instant case that he believed Todd Murray filed a complaint regarding the Chandler Estate in January 2005. However, nothing in the record supports his testimony. There is no disagreement between Judge Simes and the Commission that the Commission received notice of Judge Simes's actions in the Chandler Estate from Stark Ligon, in October 2005, and Ashley Higgins in March 2006.

ing of Judge Simes's actions following West Helena Mayor Johnny Weaver's complaint against Judge Simes relating to fired police chief Vincent Bell, case 05–123.[8] At the conclusion of that letter, Mr. Halbert wrote:

> I am aware of other irregular and inappropriate judicial conduct on behalf of this judge. I have attached for your review, a copy of the pleadings filed in the estate of Quincy Chandler, Phillips County Probate No. P–76–10A. Those pleadings speak for themselves.

Also, as was already noted, the Commission received a forwarded copy of the complaint Judge Arnold sent to the CPC in October 2005. The record does not reflect that Judge Simes was notified within ninety days of the Halbert letter or of the CPC communication.

Rule 7(A) provides that "any action" taken by the Commission after investigation shall be communicated to the judge. Specifically, the rules contemplate an investigation before action, whether that action be an admonishment to the judge or formal charges. It is clear to this court that any investigation following the Halbert letter or the CPC letter did not lead to action by the Commission, as contemplated by Rules 7(A) and 8(D).

It was only after the Ashley Higgins letter to the Commission dated March 11, 2006, that "action" in the form of formal charges, termed statement of allegations, was taken against Judge Simes. Judge Simes, however, had been notified of the Higgins complaint by the Commission's letter dated March 27, 2006, within the ninety days required by Rule 8(D).

Judge Simes complains that had he known about a pending complaint against

him, he would have acted differently before Judge Arnold and with regard to the Consent Order made with the Committee on Professional Conduct. We give this argument little credence. Again, communications with the Commission by Mr. Halbert or Mr. Ligon, which occurred before the Higgins letter dated March 16, 2006, simply did not require notice to Judge Simes because they did not result in "action" by the Commission following an investigation. While the Commission admittedly failed to notify Judge Simes within ninety days of the Halbert and CPC complaints, no action was taken against the judge in the form of an admonishment or formal charges based on those complaints. This did not, however, preclude the Commission from taking formal action after the filing of a subsequent complaint, like the Higgins letter in the instant case, where notice was properly given.

In sum, no action was taken against Judge Simes as a result of the Halbert letter or of the letter from the CPC. The triggering complaint for mandatory notice was the Higgins letter because that letter did lead to action by the Commission with its Statement of Allegations, and the notice to Judge Simes in that instance was timely. We hold that no violation of the ninety-day rule occurred and, hence, no dismissal was warranted under Rule 8(D) based on these facts.

## B. Rule 9 Violation

Judge Simes also argues that the Commission violated Rule 9(C) by failing to schedule a probable-cause determination promptly after the Higgins letter was received in March 2006. The Commission responds that Judge Simes was required,

---

8. This case, as well as 05–112 and 06–260, which related to the same facts, is currently pending before the Commission.

under Rule 8(H), to respond to the Higgins complaint within twenty days of receiving notice of it. That notice was by letter from the Commission, dated March 27, 2006. According to the Commission, Judge Simes did not file an answer until March 13, 2008, almost two years after receiving notice of the complaint.

We initially believe the Commission's argument on this point is misleading. In 2006, its rules provided that "after initial investigation and evaluation" of the original complaint, the Commission was required to determine whether there was sufficient cause to proceed and then either (1) to ask the complainant to file a "detailed, signed, sworn complaint" against the judge, or (2) to have the director prepare a statement of allegations. Ark. Jud. Discipline & Disability Comm'n R. 8(E) (2006). The Rules stated that the Commission was to serve the judge immediately with a copy of the sworn complaint or statement of allegations by the Commission's director. *Id.* R. 8(G). After receiving a copy of the sworn complaint or statement of allegations, the judge was required to file a written answer within twenty days. *Id.* R. 8(H). Rule 9(C) also required the Commission to schedule a probable-cause determination promptly after either a sworn complaint or statement of allegations from the director.

The Commission's argument before this court implies that its March 27, 2006 letter to Judge Simes regarding the unsworn Higgins complaint triggered Rule 8(H)'s requirement that Judge Simes respond within twenty days. The record makes clear, however, that the March 27, 2006 letter did not include a sworn complaint or statement of allegations. In fact, the let-

ter expressly said that "there is no requirement that you respond to the allegations in this complaint." Judge Simes is correct that the Commission did not serve him with a statement of allegations from the director until January 30, 2008, and did not hold a probable-cause hearing until March 21, 2008.

Nevertheless, Judge Simes's due-process argument on this point must fail. We first believe it fails because the Rules contemplate a prompt probable-cause hearing after a sworn complaint or statement of allegations, and not from the date of the unsworn Higgins complaint.[9] This was done. The statement of allegations was prepared by the director and considered by the Commission at a meeting on January 18, 2008. Judge Simes was then notified by letter, dated January 30, 2008, that the Commission had decided to proceed to a probable-cause determination, which was set to occur on March 21, 2008.

There is no question that a significant delay occurred between the Higgins complaint of March 16, 2006, and the preparation of the statement of allegations in January 2008. The question, then, is whether that delay prejudiced Judge Simes.

Judge Simes argues that he was prejudiced by this delay because Lazora Corbin's granddaughter, Daphane Barksdale–Arp, disappeared during that time, and he was unable to call her as a witness. He makes the conclusory statement that Ms. Barksdale–Arp "could have provided detail [sic] information about what happened to Lazora Corbin and, among other things, why she did not follow through with her intent to replace Judge Simes as the lawyer for the estate." It is clear to this court, however, that whatever may have

---

9. We disagree with Judge Simes that the prompt setting of the probable-cause determination under Rule 9(C) refers to the unsworn Higgins complaint. Rather, the prompt set-ting must occur after a sworn complaint or statement of allegations by the director under Rule 8(E).

motivated Ms. Corbin's actions did not change Judge Simes's obligations under the Code of Judicial Conduct. Judge Simes's misconduct was purely the result of his actions and inactions.

Judge Simes's argument on this point is also unsupported and undeveloped. In *Thompson*, this court declined to address a due-process challenge by then-Judge Thompson where it was not sufficiently developed with citation to authority. 341 Ark. at 274, 16 S.W.3d at 223. Despite the Commission's lengthy delay in preparing a statement of allegations against Judge Simes, he unquestionably received notice of the Higgins complaint in a timely manner. Moreover, Judge Simes shows this court no prejudice to him caused by this delay, and, accordingly, we reject his due-process argument on this point.

### C. Bias and Misconduct by Commission Staff

■ Judge Simes further claims that the Commission's Findings and Recommendations were "predetermined and tainted by the bias and misconduct of the staff and Commission members." Judge Simes supports this allegation by saying that the Commission violated its own rules, "clustered" this case with others, and arbitrarily allotted Judge Simes only ninety minutes to present his case, among other allegations. Judge Simes adds that the Commission's investigator, Lance Womack, "attempted to evade responding truthfully" at the hearing.

We hold that these arguments are without merit. As previously discussed, the Commission did not violate its rules. Furthermore, the record shows that the Commission permitted Judge Simes to postpone many hearings and attempted to accommodate his schedule so that he and his lawyers could present their case in full. Judge Simes was, in fact, given longer than ninety minutes to present his case. Moreover, Judge Simes concedes that Lance Womack "eventually did disclose the information sought to be elicited."

### V. Sanction

■ To summarize, this court agrees with the Commission that Judge Simes violated Canons 4(E), 4(G), and 2 of the Code of Judicial Conduct. We further reject Simes's arguments that his due-process rights were violated based on failure to notify him of a complaint within ninety days, that the Commission violated Rule 9, and that the proceedings were tainted by bias and misconduct on the part of the Commission's staff. The question now is whether the court should adopt the recommendation that Judge Simes be permanently removed from the bench.

As an initial matter, the facts of this case are distinguishable from those in the *Thompson* case, which is the only case where this court has permanently removed a sitting judge from the bench since the Commission was established.[10] In *Thompson*, the court listed the following facts that are to be considered in removal cases:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;

(b) the nature, extent and frequency of occurrence of the acts of misconduct;

(c) whether the misconduct occurred in or out of the courtroom;

(d) whether the misconduct occurred in the judge's official capacity or in his private life;

10. In 1988, the voters of Arkansas passed Amendment 66, which established the Commission and directed this court to "make procedural rules implementing" the amendment.

(e) whether the judge has acknowledged or recognized that the acts occurred;

(f) whether the judge has evidenced an effort to change or modify his conduct;

(g) the length of time of service on the bench;

(h) whether there have been prior complaints about this judge;

(i) the effect the misconduct has upon the integrity of and respect for the judiciary; and

(j) the extent to which the judge exploited his position to satisfy his personal desires.

341 Ark. at 278–79, 16 S.W.3d at 226 (citing *Disciplinary Proceedings Against Anderson*, 138 Wash.2d 830, 981 P.2d 426 (1999)).

In the case before us, the misconduct regarding Judge Simes's handling of the Chandler Estate does not evidence a pattern of misconduct. While the Chandler Estate was ongoing for many years, there is no allegation that Judge Simes practiced law or served as a fiduciary in any other cases. Furthermore, the misconduct in the Chandler Estate did not occur in the courtroom. We recognize that there are other pending matters before the Commission involving Judge Simes, but because they have not been resolved at this juncture, we will not consider them.

On the other hand, Judge Simes has not accepted responsibility for any wrongdoing in the Chandler Estate, other than agreeing to a caution by the CPC, and he has a history of sanctions against him. On October 15, 2004, Judge Simes received a Public Informal Adjustment from the Commission because he appeared in his robes on the cover of a music CD he sold for profit, which was an exploitation of his position to satisfy personal desires. On |23May 23, 2006, the Commission filed a Letter of Admonishment against Judge Simes for personally soliciting campaign funds during his 2004 reelection campaign, which was misconduct occurring in Judge Simes's official capacity.[11] Finally, on November 21, 2008, Judge Simes received a Letter of Reprimand from the Commission for failing to enter an order promptly in an election case. The Commission also found that his explanations for his conduct in the instant case "were not to be believed."

Former Judge Thompson, in his case, had committed many serious violations, including:

● Failing to honor a subrogation contract he and his client had executed with an insurance company (in the amount of almost $30,000).

● Failing to properly report his outside income and financial interests to the clerk of the Arkansas Supreme Court and the Secretary of State, in violation of Canon 4 and Arkansas Code Annotated sections 21–8–203 and 204(b).

● Issuing over fifty-nine insufficient checks from his operating fund over a period of five years and refusing to compensate the payees until the prose-

---

**11.** This court is aware that the Eighth Circuit Court of Appeals subsequently held that certain solicitation provisions of the Minnesota Code of Judicial Conduct violated the First Amendment. *See Republican Party v. White*, 416 F.3d 738 (8th Cir.2005). In that case, the plaintiffs challenged only the fact that they were prohibited under the Code from soliciting contributions from large groups and from transmitting solicitation messages, through their campaign committees, over their personal signature. It is unclear from the record in this case whether Judge Simes was disciplined for soliciting contributions from attorneys in person. However, it is clear that Judge Simes's conduct violated the Arkansas Code of Judicial Conduct at the time it occurred.

cutor's office threatened to issue a warrant.

- Failing to pay his 1994 federal personal income tax, despite being financially able to do so.

- Operating a motor vehicle with a fictitious license plate, in violation of Arkansas Code Annotated section 27–14–306.

- Depositing client funds in a personal account, rather than an identifiable trust account.

It is clear that in the instant case, the misconduct of Judge Simes does not rise to the level of misconduct engaged in by then-Judge Thompson.

We conclude that the conduct of Judge Simes does not warrant permanent removal from the bench. We conclude further that the more appropriate sanction for his conduct is suspension without pay. The suspension will continue until the end of his term on December 31, 2010, after which time the newly elected judge will assume the bench. We do not foreclose the possibility of Judge Simes running for reelection in 2010. However, during the period of suspension until December 31, 2010, Judge Simes shall be prevented from the practice of law because he is a judge, albeit a suspended one. Judge Simes, of course, can resign and vacate his judgeship at any time, which would allow him to practice law.

Order of suspension entered. Motion to strike extraneous material from record denied.

Special Justice RON SHEFFIELD joins in this opinion.

HANNAH, C.J., and CORBIN, J., concur in part and dissent in part.

DANIELSON, J., dissents in part and concurs in part.

WILLS, J., not participating.

JIM HANNAH, Chief Justice, concurring in part and dissenting in part.

I concur in the majority's conclusion that the findings of the Judicial Discipline and Disability Commission that Judge L.T. Simes violated Canons 4(E), 4(G), and 2 of the Cannons of Judicial Conduct are not clearly erroneous. However, I dissent from the majority's decision to suspend Judge Simes. I believe that the Commission was correct in recommending that Judge Simes should be permanently removed from the bench. Maintaining public confidence in the integrity of the judiciary requires no lesser sanction.

The matter raised by the Commission is confined solely to Judge Simes's conduct on the bench concerning the Chandler Estate. As the majority notes, *Judicial Discipline & Disability Commission v. Thompson,* 341 Ark. 253, 16 S.W.3d 212 (2000), sets the current standard for judicial discipline cases. There, we adopted the factors set out in *Disciplinary Proceedings Against Anderson,* 138 Wash.2d 830, 981 P.2d 426, 437–38 (1999). Among the factors adopted in *Thompson,* the following are relevant in analyzing the present matter:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;

(b) the nature, extent and frequency of occurrence of the acts of misconduct;

. . .

(e) whether the judge has acknowledged or recognized that the acts occurred;

(f) whether the judge has evidenced an effort to change or modify his conduct;

(g) the length of time of service on the bench;

(h) whether there have been prior complaints about this judge;

(i) the effect the misconduct has upon the integrity of and respect for the judiciary.

*Thompson,* 341 Ark. at 278–79, 16 S.W.3d at 226. I agree with the majority's conclusion that the facts of *Thompson* are distinguishable from the facts in the present case; however, I disagree that Judge Simes's conduct does not involve a pattern of misconduct. The misconduct at issue may have all occurred in one matter, but it was repeated over and over while Judge Simes served as circuit judge. Judge Simes's conduct was different than the conduct discussed in *Thompson.* For that reason, I believe the two cases are not comparable.

Judge Simes became involved in the Chandler Estate in 1976 prior to his election as circuit judge. He served as the attorney for the Chandler Estate and was appointed by the Phillips County Probate Court as the personal representative of the Chandler Estate. In 1986, the probate court entered an order directing attorney Simes to receive, as personal representative, the annual rental payments for the Chandler Estate's real property. Judge Simes became a circuit judge on January 1, 1997.

Upon his election as circuit judge, Judge Simes did not file an accounting nor did he obtain an order from the probate court discharging him as the personal representative of the Chandler Estate. Judge Simes did not offer any reasonable or credible explanation as to why he failed to obtain an order discharging him or for failing to file an accounting. The rental checks continued to be sent to Judge Simes each December, and each year he failed to disburse the proceeds to the heirs of the Chandler Estate. He also failed to file an annual accounting as required.

This misconduct was repeated over and over for the six years after he took the bench. It ended only when attorney Jesse B. Daggett was retained and obtained an order from the probate court requiring Judge Simes, as personal representative of the Chandler Estate, to make an accounting with respect to his administration of the Chandler Estate. This misconduct is not an isolated event; rather it demonstrates a pattern of misconduct.

Judge Simes has not accepted responsibility for his misconduct. It was only when attorney Daggett became involved that Judge Simes began to try to account for the money he had received in the administration of the Chandler Estate. Only after a hearing before Special Judge W.H. "Dub" Arnold in 2005, in which the court found that Judge Simes had never filed an accounting as ordered, and that Judge Simes had breached his duty to the Chandler Estate and was liable therefore under Arkansas Code Annotated section 29–52–101(c) (Repl.2004), and only after an order was entered that he repay the Chandler Estate, did Judge Simes pay the Estate the money he had owed it for so long. He was ordered to and did pay a total of $24,183, which included interest.

I also note that in the course of the above-noted hearing, Judge Simes filed a petition for fees in the amount of $13,940.77. It included fees allegedly earned during the time that Judge Simes was serving as a circuit judge.

Judge Simes has previously been sanctioned for violations of the Code of Judicial Conduct. As the majority pointed out, Judge Simes received a Public Informal Adjustment from the Commission in 2004 and a Letter of Admonishment from the Commission in 2006. More disturbing is a Letter of Reprimand Judge Simes received on November 21, 2008. Judge

Simes failed to timely enter an order in an election case. Judge Simes had represented in his quarterly report under Arkansas Supreme Court Administrative Order No. 3 that he had no cases under advisement and then subsequently entered on May 29, 2007, an order with a signature date of December 6, 2006. *See Willis v. Crumbly*, 370 Ark. 374, 259 S.W.3d 417 (2007).

The judiciary cannot function without the trust and confidence of the people. Judge Simes's misconduct seriously undermines the integrity of and respect for the judiciary. This results in the people losing trust and confidence in the judiciary. I must conclude that our duty to protect the integrity and the respect for the judiciary requires that Judge Simes be removed from the bench as the Commission recommends. Because the sanction imposed is inadequate to protect the integrity of the judiciary, I respectfully dissent as to the sanction.

CORBIN, J., joins.

PAUL DANIELSON, Justice, dissenting in part and concurring in part.

While I disagree with the majority, I readily acknowledge that reasonable people could differ on this case. Here, I disagree with the majority on four specific points: (1) that there was a violation of Canon 4(G) by Judge Simes; (2) that Judge Simes violated Canon 4(E); (3) that the Commission followed its own rules; and (4) that Judge Simes should be suspended without pay until the end of his current term. Further, I agree that Judge Simes's due-process rights were not violated, but for different reasons than those of the majority. Accordingly, I respectfully dissent in part and concur in part. While I agree with the majority that Judge Simes's failure to act clearly violated Canon 2, I would reject the Commission's recommendation of removal, but would suspend Judge Simes for ninety days without pay.

Let me begin by stating that I in no way sanction or condone Judge Simes's failure to act regarding the Chandler Estate. He clearly should have removed himself as attorney for the Estate and administrator upon receiving Ms. Corbin's letter. Indeed, his failure to do so and his failure to act responsibly as an attorney or administrator would be subject to review, either in a court of law or before the Professional Conduct Committee. However, I cannot agree that his failure to act after taking office violated the plain language of Canons 4(G) and 4(E), for the following reasons.

## I. *Canon 4(G)*

Canon 4(G) of the Code of Judicial Conduct provides:

> G. *Practice of Law.* A judge shall not practice law or appear as counsel in any court within this state. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

Ark.Code Jud. Conduct Canon 4(G) (2006). In *Judicial Discipline & Disability Commission v. Thompson*, 341 Ark. 253, 16 S.W.3d 212 (2000), this court relied on the following to define "practice of law":

> It is quite true that the practice of law is not confined to services by an attorney in a court of justice; it also includes any service of a legal nature rendered outside of courts and unrelated to matters pending in the courts. (Citations omitted.) It is uniformly held that writing and interpreting wills, contracts, trust agreements, and the giving of legal advice in general constitute practicing law.

341 Ark. at 263, 16 S.W.3d at 216 (quoting *Undem v. State Bd. of Law Exam'rs,* 266 Ark. 683, 692, 587 S.W.2d 563, 568 (1979) (analyzing "engaged in the active practice of law")) (emphasis in original removed). We have further defined "practice of law" in our Regulations of the Arkansas Continuing Legal Education Board:

> The practice of law shall be defined as any service rendered, regardless of whether compensation is received therefor, involving legal knowledge or legal advice. It shall include representation, provision of counsel, advocacy, whether in or out of court, rendered with respect to the rights, duties, regulations, liabilities, or business relations of one requiring the legal services. It shall encompass all public and private positions in which the attorney may be called upon to examine the law or pass upon the legal effect of any act, document, or law.

Ark. Continuing Legal Education Bd. Reg. § 2.02 (2009).

As to this canon, Judge Simes urges that there is a lack of evidence that he ever practiced law after becoming a judge. However, the Commission submits that Judge Simes engaged in the practice of law "by failing to ensure that he had withdrawn from further proceedings in the Chandler Estate once he claimed to have been terminated by [Ms.] Corbin." Additionally, the Commission points to Judge Simes's continued acceptance of rental payments as further evidence of his practice of law.

The Commission's argument is nonsensical. It is clear from our definitions of the practice of law that a service of legal nature must be rendered to indeed "practice law." Here, Judge Simes negligently failed to act. He did fail to remove himself from representing the Chandler Estate upon receiving Ms. Corbin's letter; however, that failure took place well before he became a judge. Further, he neglected to do anything with the rental checks he received after becoming a judge, except to file them away. But, did this failure to act constitute the practice of law or an admission of the practice of law? I cannot say that it did. To practice law, Judge Simes had to render a service of a legal nature to another. That he did not do, in my opinion, where he failed to act on behalf of the Estate. Furthermore, the Commission presented no evidence that Judge Simes rendered any service of a legal nature to another during his time on the bench. And, as the majority acknowledges, merely remaining listed as the attorney of record does not equate to the practice of law.

While the Commission urges that the acceptance of rental checks is further evidence of Judge Simes's practice of law, he received those payments in his capacity as an administrator of the Estate, not as attorney for the Estate. Moreover, the evidence in the record demonstrates that, while Judge Simes received certain checks, he did nothing with them but file them away. Under these facts, I simply cannot say that Judge Simes's failure to ensure his withdrawal or his acceptance and filing of rental checks constituted the practice of law, or service of a legal nature to another.

I am further troubled by the majority's observations that Judge Simes engaged in the practice of law in that he corresponded with the probate clerks regarding his role and the rental checks, that "he worked actively" with the attorney for the Estate to construct an accounting, and that he appeared before the circuit court while a judge. Part of Judge Simes's defense against the instant charges was that he took no action because he feared it would be interpreted as practicing law. Indeed, his fears have come true. It seems to me that these actions are precisely those we would wish taken under such

circumstances. Each of these actions was clearly an attempt to remedy the situation; surely no one would rather Judge Simes have ignored the situation in toto. Moreover, Judge Simes represented himself and was in no way acting as counsel for another when he appeared before Judge Arnold, as the Estate had other counsel at that time.[1] To find that these actions constituted the practice of law while he was serving as a judge and to penalize Judge Simes for them is simply a misinterpretation and misapplication of the canon. For these reasons, it is my opinion that the Commission's finding that Judge Simes violated Canon 4(G) was clearly erroneous.

## II. *Canon 4(E)*

Canon 4(E) of the Arkansas Code of Judicial Conduct provides, in pertinent part:

> (1) A judge shall not serve as executor, administrator or other personal representative, trustee, guardian, attorney in fact or other fiduciary, except for the estate, trust, or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of judicial duties.

Ark.Code Jud. Conduct Canon 4(E)(1) (2006). Here, Judge Simes argues that while he was listed as administrator of the Estate, he did not "serve" as administrator while he was a judge. He contends that because he refrained from any involvement in the Estate after he became a judge, there is no evidence that he served as administrator. I agree.

It is undisputed that Judge Simes remained listed as the administrator of the Chandler Estate even after he became a judge in 1997. However, I cannot say that simply being listed or named on the court docket as an administrator equates to service. "Serve" has been defined as "to hold an office: discharge a duty or function: act in a capacity." *Webster's Third New Int'l Dictionary* 2075 (2002). The question then is did Judge Simes act as an administrator while serving as a circuit judge? The answer is clearly no.

The record before us demonstrates that, while Judge Simes received certain rental checks from Mr. Young for the Chandler property after taking office, Judge Simes did not deposit them or remit them to the Chandler heirs. Instead, he turned over to Jesse Daggett the uncashed checks he had received. Nor does the record contain any evidence that Judge Simes acted, in any way, on behalf of the Estate or in the capacity as administrator, while a judge.

That being said, the Commission argues that Judge Simes's failure to perform professionally or with the diligence required by the fiduciary relationship he undertook damaged the Estate and undermined confidence in the bench, thereby violating Canon 4(E). However, the canon clearly speaks to one's service, not one's failure to serve. I fail to see the Commission's logic in its assertion that Judge Simes's failure to perform as a fiduciary equates to service as a fiduciary in violation of Canon 4(E).

Finally, Judge Simes did submit a petition for fees that included one hour and fifteen minutes of time spent while he was a judge. However, I cannot say that the submission of the fee petition constituted service as an administrator. Instead, I find that submission much more probative of Judge Simes's violation of Canon 2.

Because I cannot say that merely being listed or named as an administrator constitutes service,[2] nor can I say that the fail-

---

1. Canon 4(G) specifically permits a judge to act pro se.

2. While the failure to move a court to remove one's self from a case or from an appointment

ure to act by Judge Simes after assuming the bench constituted service as an administrator, I would hold that the Commission's finding that Judge Simes's conduct violated Canon 4(E)(1) was clearly erroneous.

### III. *Due–Process Rights*

While I agree with the majority that Judge Simes's due-process rights were not violated, I do so for different reasons. In addition, it is clear to me that the Commission failed to comply with its own rules; however, its noncompliance did not violate Judge Simes's due-process rights.

### A. *Meaningful Notice*

Judge Simes asserts that the investigation by the Commission of his involvement with the Chandler Estate began well before 2006, when the complaint in 06–171 was filed. He contends that the Commission gave him no notice when the investigation was actually begun and that he was prejudiced by that lack of notice. Specifically, he avers that the Commission's failure to abide by Ark. Jud. Discipline & Disability Comm'n R. 8(D) prejudiced him by ⌊35 denying him his clear right of dismissal of the instant action, as he claims is mandated by Rule 8, and by rendering him unable to adequately defend himself during the proceedings before the Phillips County Circuit Court and the Committee on Professional Conduct. The Commission, in turn, acknowledges that it received information regarding Judge Simes's conduct in the Chandler matter prior to the filing of the formal complaint in the instant case, 06–171; acknowledges that its investigator had made preliminary inquiries concerning Judge Simes and the Chandler

matter when information regarding such was disclosed during earlier, separate investigations of him; and acknowledges that as part of its investigation of another complaint, it contacted Judge Bell regarding the Chandler matter. The Commission, however, contends that it was "simply involved in the investigation of information or inferences before opening a case against Judge Simes, reflecting the [Commission's] obligation not to proceed with the disciplinary process without proper investigation and evaluation of the information forwarded to it." Finally, the Commission urges that Judge Simes has wholly failed to demonstrate any prejudice resulting from the alleged violation of the notice requirement.

This court has previously held that the removal of a commissioner by the governor and the discipline of attorneys are adversary proceedings of a quasi-criminal nature and that one so charged is therefore entitled to procedural due process, including fair notice of the charge. *See Stilley v. Supreme Court Comm. on Prof'l Conduct,* 370 Ark. 294, 259 S.W.3d 395 (2007) (citing *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)) (attorney discipline); *Rockefeller v. Hogue,* 246 ⌊36 Ark. 712, 439 S.W.2d 805 (1969) (citing *Ruffalo, supra*) (removal of a commissioner). A judge accused of misconduct, then, is entitled to no less. *See In re Deming,* 108 Wash.2d 82, 736 P.2d 639 (1987).

The 2006 Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission set forth the procedure to be followed regarding the conduct of a judge at the time the instant complaint was

---

as a fiduciary once a judgeship election has been won is not the most prudent or diligent behavior, I simply cannot say that the failure to do so constitutes service in violation of the

Canons of Judicial Conduct. In many cases, such a failure may merely be an oversight on the part of the judge-elect.

filed.[3] Rule 8 of those procedures provides, in pertinent part:

A. *Initiation of Inquiry.* In accordance with these rules, any information submitted by a complainant or otherwise brought to the attention of the Commission stating facts that, if true, would be grounds for discipline shall initiate an inquiry relating to the conduct of the judge. The Commission on its own motion may make inquiry with respect to the conduct of a judge.

B. *Screening. Upon receipt of a complaint* or other information as to conduct that might constitute grounds for discipline of a judge, the executive officer *shall make a prompt, discreet, and confidential investigation* and evaluation. Under guidelines approved by the Commission, and in light of the initial investigation and evaluation, the executive officer shall determine whether there exists sufficient cause to proceed to a probable cause determination.

The executive officer *shall dismiss all complaints* for which sufficient cause to proceed is not found. *A report as to matters so dismissed shall be furnished to the Commission* at its next meeting. *The complainant, if any, and the judge, if he has been given notice thereof, shall be informed in writing of the dismissal.*

C. *Optional Notice to the Judge.* Notice to the judge that a complaint has been received or an inquiry undertaken may be given at any time.

D. *Mandatory Notice to the Judge.* Except on good cause shown and with the approval of the Commission, *no action other than dismissal* of the complaint *shall be taken as to any complaint about which the judge is not notified* within ninety (90) days of the receipt of such complaint.

Ark. Jud. Discipline & Disability Comm'n R. 8(A)–(D) (emphasis added). Here, the Commission admits that it received earlier information and conducted an investigation of Judge Simes and his involvement in the Chandler Estate, but asserts that he received timely notice of the complaint the Commission received by attorney Ashley Higgins, which served as the basis for case 06–171.

My review of the record reveals that perhaps as early as 2004, the Commission had knowledge of Judge Simes and the Chandler matter. Specifically, the record reflects the following evidence of that knowledge: (1) an affidavit by Judge Kathleen Bell regarding events in the matter and stating her recusal from the matter, but referencing a 2004 complaint;[4] (2) a letter from attorney Charles Halbert regarding both the Chandler matter and another matter involving Judge Simes, dated February 22, 2005; (3) a letter dated March 8, 2005, from the Commission to Judge Bell, requesting a responsive letter on the status of the Chandler Estate case; (4) a letter from Judge Bell to the Commission, dated March 16, 2005, stating that she had recused from the Chandler matter; (5) a letter from the Committee on Professional Conduct, dated October 31, 2005, forwarding a copy of Judge Arnold's order in the Chandler Estate; and finally, (6) the March 16, 2006 letter of Mr. Higgins. Guided by the language of Rule 8, it

---

**3.** I note that the rules were the same in both 2004 and 2005; thus, the same rules apply to the complaints alleged by Judge Simes to have been brought in those years.

**4.** According to the testimony of Lance Womack, the Commission's investigator, he thought the earliest allusion to the Chandler Estate matter may have come from attorney Charles Halbert in 2004 in case 04–206. While Judge Bell's affidavit was undated, the heading of the affidavit reveals that it was in reference to "Complainant No. 04–206."

would appear from the record before us that there were at least two specific prior complaints regarding Judge Simes's involvement in the Chandler Estate, specifically, the February 22, 2005 letter from Mr. Halbert and the October 31, 2005 letter from the Committee on Professional Conduct. Yet, the record fails to reflect that the Commission ever notified Judge Simes of these complaints. While the Commission, pursuant to Rule 8, was permitted to conduct preliminary investigations into each of the earlier complaints, it does not appear from the record that the proper procedures were followed by the Commission with respect to these earlier complaints.

According to the rule, based on those initial investigations and evaluations, the director of the Commission was to "determine whether there exist[ed] sufficient cause to proceed to a probable cause determination." Ark. Jud. Discipline & Disability Comm'n R. 8(B). If there was not sufficient cause to proceed, the director was to dismiss the complaints. *See id.* In doing so, a report to the Commission was to be made of matters so dismissed. *See id.* No record of such a report has been provided by the Commission.

In addition, the rules also require that no action other than dismissal of the complaints should have been taken where Judge Simes had not been notified within ninety days of the receipt of the complaints, unless good cause is shown and the Commission has approved. *See id.* Again, the record lacks any provision of notice to Judge Simes of either of the earlier complaints, nor any dismissal thereof.[5]

Based on the record before this court, it is clear to me that the Commission failed to follow the procedures set forth in Rule 8 with respect to the two earlier complaints the Commission received in 2005. However, I cannot say that the Commission's failure to follow its procedures was "so violative of due process as to raise the concern that fundamental fairness may not have attached." *In re Kirby,* 354 N.W.2d 410, 416 (Minn.1984) (holding that, despite concern about the insufficient notice given to the respondent judge, the Board on Judicial Standards's ignoring its own rules was not violative of due process). Procedural due process requires that a judge be given notice of the proceedings, that the judge be given an opportunity to be heard, and that the proceedings against the judge be essentially fair. *See In re Graziano,* 696 So.2d 744 (Fla.1997).

While Judge Simes urges that the Commission's failure to notify him of the prior complaints rendered him unable to adequately defend himself during the proceedings before the Phillips County Circuit Court and the Committee on Professional Conduct, that is of no moment, as the issue with respect to procedural due process is whether the instant proceedings were fair, and they were. Whether Judge Simes would have been able to better defend himself before the circuit court and the Committee on Professional Conduct would depend on the notice provided in each of those proceedings, not on any notice of the

---

**5.** The majority mistakenly concludes that Rule 7(a) rendered any notice of the prior complaints by the Commission to Judge Simes unnecessary; however, that rule does not speak to when a judge shall receive notice. Rule 7 is entitled "Disclosure" and addresses the confidentiality requirements for the Commission and when the Commission's actions shall be made public. Pursuant to Rule 8, the Commission, at the very least, if no notice was provided to Judge Simes, was required to dismiss the earlier complaints after ninety days. Again, there is no record that the Commission did so in compliance with the rules.

prior complaints against him. Further, Judge Simes's claim that the Commission's failure to follow its rules with respect to the earlier complaints precluded his right to a dismissal of the instant action is too without merit. Again, the Commission followed its rule with respect to Mr. Higgins's complaint, which was the basis of this case against him, 06–171; therefore, he was not entitled to a dismissal of the instant action. Here, Judge Simes has failed to demonstrate any violation of his procedural due-process rights, as it is clear from the record that he received timely notice of the complaint by Ashley Higgins that served as the basis for this case, 06–171; that he was given, and clearly took advantage of, the opportunity to be heard by the Commission; and that the proceedings against him were fair.

### B. Promptness of Probable Cause Hearing

Judge Simes further contends that the Commission did not provide him with a prompt probable cause hearing, where he received notice of the action on March 27, 2006, and the probable cause hearing was not held until March 21, 2008. The Commission, in turn, urges that any delay in the holding of the probable cause hearing was due to Judge Simes's failure to file an answer to the complaint until March 13, 2008.[6]

The 2006 rules clearly contemplate a prompt probable cause hearing. According to the Procedures, if, after the initial investigation and evaluation, it appears there is sufficient cause to proceed, a sworn complaint[7] shall be obtained from the complainant or a clear statement of allegations against the judge shall be prepared by the director of the Commission. See Ark. Jud. Discipline & Disability Comm'n R. 8(E). Then, the sworn complaint or statement of allegations shall immediately be served upon the judge. See Ark. Jud. Discipline & Disability Comm'n R. 8(G). Within twenty days after service of the sworn complaint or statement of allegations, the judge shall file a written answer or may personally appear. See Ark. Jud. Discipline & Disability Comm'n R. 8(H). Upon receipt and review of that answer, the Commission may terminate the proceeding and dismiss the complaint, giving notice to the judge and complainant. See Ark. Jud. Discipline & Disability Comm'n R. 8(I). The Commission also has the right to amend the allegations, prior to a finding of probable cause, provided that notice and an opportunity to respond within ten days is given to the judge. See Ark. Jud. Discipline & Disability Comm'n R. 8(J). It then "shall promptly schedule and hold a formal meeting," termed a "probable cause determination." Ark. Jud. Discipline & Disability Comm'n R. 9(C).

While the Commission urges that the delay was Judge Simes's, that was not the case. Here, Mr. Higgins's complaint was received by the Commission on March 20, 2006, and notice of it was provided to Judge Simes on March 27, 2006. On May 11, 2006, the Commission again notified Judge Simes of the complaint against him. However, the record reveals that it was not until January 30, 2008, that the Commission provided its statement of allega-

---

6. The Commission seems to misconstrue Judge Simes's argument. His argument is only that the Commission failed to promptly make a probable cause determination, not that it failed to promptly dispose of the charges. Thus, while the Commission points to what it claims were numerous requests for continuances by Judge Simes, those requests were made after the date of the probable cause hearing, so it is clear that they had no bearing on the promptness of the hearing itself.

7. This sworn complaint is entirely separate from the complaint originally received by the Commission relating to a judge.

tions against Judge Simes to him. Pursuant to the rules, it was not until after the statement of allegations was served upon Judge Simes that he was required to answer.[8]

Based on the record before this court, it certainly appears to me that any delay in conducting the probable-cause hearing was of the Commission's making, as it did not serve the statement of allegations on Judge Simes until some twenty-two months after its receipt of the initial complaint by Mr. Higgins. That being said, it is clear to me that this lapse did not violate Judge Simes's procedural due-process rights. Again, procedural due process requires that a judge be given notice of the proceedings, that the judge be given an opportunity to be heard, and that the proceedings against the judge be essentially fair. *See Graziano, supra.* As already set forth above, those requirements were met in the instant case, and Judge Simes's procedural due-process rights were not violated by the delay in his probable-cause hearing.

For these reasons, I concur with the majority that Judge Simes's due-process rights were not violated.

## IV. *Recommendation*

I turn, then, to the Commission's recommendation that Judge Simes's actions compel his removal from his position of circuit judge. It is evident from the record that Judge Simes's choices in handling the Chandler Estate matter while on the bench were not the most prudent professionally or were the choices that a majority of judges in his situation would have made. However, that is not our standard for determining disciplinary action. We have observed that "[w]hether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the text [of the canons] and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system." *Thompson,* 341 Ark. at 280, 16 S.W.3d at 227 (quoting Preamble, Ark.Code Jud. Conduct).

As noted by the majority, we have further recognized certain factors to be considered in determining the appropriate sanction for judicial misconduct, including: (1) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (2) the nature, extent, and frequence of occurrence of the acts of misconduct; (3) whether the misconduct occurred in or out of the courtroom; (4) whether the misconduct occurred in the judge's official capacity or in his private life; (5) whether the judge has acknowledged or recognized that the acts occurred; (6) whether the judge has evidenced an effort to change or modify his conduct; (7) the length of time of service on the bench; (8) whether there have been prior complaints about this judge; (9) the effect the misconduct has upon the integrity of and respect for the judiciary; and (10) the extent to which the judge exploited his position to satisfy his personal desires. *See id.*

It is clear that Judge Simes's actions prior to assuming the bench were not the epitome of what one expects from an attorney. However, he was sanctioned by our Office of Professional Conduct for those lapses in judgment. That additional lapses of judgment took place after Judge Simes took office is also most evident and does require some sort of sanction. Like the

---

8. In its brief, the Commission states that Judge Simes was required to answer the complaint within twenty days. It is wrong. A plain reading of the 2006 rules reveals that the judge shall answer within twenty days of the *sworn* complaint or statement of allegations. *See* Ark. Jud. Discipline & Disability Comm'n R. 8(H).

majority, however, I cannot agree with the Commission's recommendation that Judge Simes's lapses in judgment are of the sort that require his removal from the bench. Certainly, Judge Simes's situation is one of which many lawyers who assume the bench should take note, but that, again, does not warrant removal in this case.

While the Commission presented evidence of other sanctioned behavior by Judge Simes, it does not appear that he previously engaged in the actions that served as the basis of this case, nor does it appear that Judge Simes's actions greatly affected the judicial system. His misconduct took place outside of the courtroom, not in his capacity as a judge, and Judge Simes seems to acknowledge that the acts occurred. The acts in this case appear to have been isolated and do not appear to require any additional change or modification on Judge Simes's part, nor do I believe that Judge Simes exploited his position to satisfy his personal desires; instead, he was lackadaisical in exercising his professional judgment. While he has served as a judge for approximately twelve years, and he has had prior complaints filed against him for which he has already been sanctioned, the instant allegations, after examining all of the factors in determining the appropriate sanction, simply do not require Judge Simes's removal.

While the majority agrees, it has suspended Judge Simes until the next election for his particular judicial seat. It has further precluded him from the practice of law during his suspension. For all intents and purposes, then, it has removed him, which I believe to be extremely harsh.[9] Such a sanction, in my opinion, should be reserved for intentional conduct that is harmful to the integrity of the judiciary, not negligent lapses in judgment.

As the majority acknowledges, Judge Simes's misconduct is in no way as egregious as that in *Thompson*. Accordingly, taking a reasonable and reasoned application of the text of the canons; looking at the seriousness of the transgression, whether there was a pattern of improper activity, and the effect of the improper activity on others or on the judicial system; and examining the factors set forth above, as I must under our case law, it is my opinion that Judge Simes violated only Canon 2 and should be suspended for ninety days without pay.

For all of the foregoing reasons, I respectfully dissent in part and concur in part.

---

9. Even if I agreed with the majority that Judge Simes violated Canons 4(G) and 4(E), I would still disagree with the majority's sanction, after examining the *Thompson* factors.