**ARKANSAS JUDICIAL DISCIPLINE AND DISABILITY COMMISSION,**
Petitioner

v.

**Honorable L.T. SIMES, Respondent.**

No. 10–1287.

Supreme Court of Arkansas.

May 5, 2011.

See also 367 Ark. 159, 238 S.W.3d 74.

Terrance Cain, and George E. Hairston, Esq., by: George E. Hairston, for appellant.

David A. Stewart and David J. Sachar, Judicial Discipline & Disability Commission, and J. Thomas Sullivan, Little Rock, for appellee.

JIM HANNAH, Chief Justice.

Petitioner Arkansas Judicial Discipline and Disability Commission ("the Commission") has filed with this court its final findings, conclusions, and recommendations, pursuant to Arkansas Judicial Discipline and Disability Commission Rule 12(A) (2010), and recommends that this court remove respondent the Honorable L.T. Simes, II, from the office of Circuit Judge of the First Judicial District, First Division, of the State of Arkansas. The Commission bases its recommendation of removal on its conclusions that Judge Simes violated Canons 1, 2(A), and 3(B)(1),

(2), (5), and (7) of the Arkansas Code of Judicial Conduct (2006).[1]

The instant matter arises from this court's referral to the Commission to investigate Judge Simes's conduct in *Weaver v. City of West Helena,* No. CV05–4 (2005), which was appealed to this court, *see Weaver v. City of West Helena,* 367 Ark. 159, 238 S.W.3d 74 (2006).

In November 2004, West Helena Mayor Johnny Weaver fired West Helena Police Chief Vincent Bell, and Bell filed a notice of appeal in the Phillips County Circuit Court on December 15, 2004. That case was assigned to Circuit Judge Harvey Yates. The West Helena City Council, in a meeting called on January 1, 2005, declared the seat of Alderman Eddie Schieffler vacant, even though Schieffler disputed the declared vacancy and was present and was attempting to vote. James Parks was elected to fill Schieffler's position and voted to reinstate Bell with the two-thirds majority, which the council maintained rendered the vote "veto-proof." The council then voted to abolish the Civil Service Commission. Weaver subsequently vetoed all measures taken by the city council at that meeting. The circuit court later ruled that there had been no vacancy for Schieffler's position, that Parks was thus a usurper, and that all actions taken by the city council at the January 1 meeting were null and void.

On January 3, 2005, Bell, Parks, and five other members of the city council who had voted to reinstate Bell filed suit in Phillips County Circuit Court, asking Circuit Judge L.T. Simes for a temporary restraining order ("TRO") which he granted ex parte, reinstating Bell and restraining

1. New canons adopted by this court became effective on July 1, 2009. *See In re Arkansas Bar Ass'n Petition to Amend Code of Judicial Conduct,* 2009 Ark. 238 (per curiam). The complaint in this case was lodged in 2006; therefore, it involves the 2006 canons.

Weaver from interfering in the day-to-day operations of the police department.

On January 6, 2005, approximately one hour before the scheduled hearing on the TRO, Weaver filed a motion for recusal. In the motion, Weaver alleged that Judge Simes (1) had initiated an improper ex parte conversation with him and asked him to deal leniently with Bell; (2) owned an interest in a radio station that was going to be paid to air city council ₃meetings; and (3) had issued the TRO despite knowing that a connected case was pending before another judge. A hearing on the motion for recusal was conducted in lieu of the scheduled TRO hearing, at which time Weaver testified about the matters contained in the motion for recusal. In the midst of Weaver's testimony, Judge Simes called a recess and moved the proceedings to his chambers.

The next day, January 7, 2005, Judge Simes issued an order scheduling a hearing on the motion for recusal for 1:00 p.m. that day in Forrest City, Arkansas. At that hearing, Judge Simes removed Weaver from the courtroom at the outset of the proceedings and then conducted an inquiry into possible Rule 11 violations by Weaver's attorney, Todd Murray. Weaver and Murray were given no notice that possible Rule 11 violations would be considered at the hearing, and the Rule 11 inquiry was taken up by the court before there had been a full hearing on the merits of the allegations in the motion for recusal.

On January 26, a full hearing on the TRO was conducted by Judge Simes. On April 28, Judge Simes entered an order in which he declined to recuse from the case and imposed Rule 11 sanctions on Murray and Weaver for filing the motion to recuse for an improper purpose and without a proper factual foundation. Judge Simes acknowledged the rulings that invalidated all the actions taken at the January 1, 2005

city council meeting, but he refused to dissolve the TRO, ruling that the TRO was to be held in abeyance pending further action by the city council and Weaver. Weaver appealed the rulings in the April 28 order, as well as Judge Simes's decision to remove him from the courtroom during the January 7 recusal hearing.

₄This court concluded that all of the points on appeal were moot with the exception of the imposition of sanctions under Rule 11, and we reversed on that point. We held,

> In summation, the procedural requirements for the imposition of sanctions under Rule 11 were disregarded by Judge Simes, and the appellant was subjected to a de facto Rule 11 hearing of which he was given no notice. That hearing occurred before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish that the allegations were false. Judge Simes relied on improper bases in his order imposing the sanctions. For the foregoing reasons, we conclude that Judge Simes abused his discretion by imposing sanctions upon the appellant under Rule 11. Based on the record before us, it appears that Judge Simes has violated the Arkansas Code of Judicial Conduct. Accordingly, we direct the clerk of this court to forward a copy of this opinion to the Arkansas Judicial Discipline and Disability Commission. *See Walls v. State,* 341 Ark. 787, 20 S.W.3d 322 (2000).

*Weaver,* 367 Ark. 159, 165, 238 S.W.3d 74, 79 (2006).

As a result of this court's referral, the Commission investigated Judge Simes's conduct in the *Weaver* case and proceeded to a formal adjudication. Judge Simes and Todd Murray were called before a three-member panel of the Commission to testify

about the facts surrounding the *Weaver* case. After the hearing, the panel concluded that Judge Simes violated Canons 1, 2(A), and 3(B)(1), (2), (5), and (7) of the Arkansas Code of Judicial Conduct and recommended that Judge Simes be removed from office. The full commission adopted the panel's report, which made the following findings and conclusions:

1. Judge Simes's failure to recuse from conducting the Rule 11 proceedings against Murray and Weaver violates Canons 2(A) and 3B(1).

2. Judge Simes subjected Murray and Weaver to a de facto Rule 11 hearing, of which they were given no notice, in violation of Canons 2(A) and 3B(2).

3. Judge Simes conducted the Rule 11 proceedings before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish the allegations were false. Judge Simes proceeded to court-initiated Rule 11 sanctions before the falsity of the motion for recusal allegations were established. Because Judge Simes was the subject of the allegations, it was improper for him to conduct the Rule 11 proceedings, in violation of Canons 2(A) and 3B(2), (7).

4. In his conduct of the hearing on the motion for recusal, which the following day became a Rule 11 proceeding, Judge Simes's facial expression and body language toward Murray gave an appearance of judicial bias, in violation of Canon 3(B)(5).

5. Judge Simes relied on improper bases in his order imposing sanctions. Ark. R. Civ. P. 11 applies only to assertions contained in papers filed with or submitted to the court. Judge Simes not only used written allegations that Murray had withdrawn prior to his decision on sanctions, but also considered oral statements made by Murray and Weaver in making his determination on Rule 11 sanctions. Further, Judge Simes misrepresented the testimony of Murray in his order when he found that Murray had admitted to "judge shopping" when he responded to Judge Simes's statement that there was an issue in this case about judge shopping. Judge Simes's conduct violates Canons 1 and 3(B)(2).

In accordance with the panel's recommendation for removal, the Commission made the following recommendation to this court:

> Consistent with the Rules of Procedure of this Commission, a majority[2] of all members of the Commission adopt the findings of fact and conclusions of law set forth herein, and pursuant to the factors enumerated by the Arkansas Supreme Court in *Judicial Discipline & Disability Commission v. Thompson,* 341 Ark. 253, 278[, 16 S.W.3d 212] (2000), recommend that Circuit Judge L.T. Simes be removed from his position as the Circuit Judge of the First Judicial District.

2. Commission Chairman, Judge Leon Jamison, dissented from the Commission's findings and recommendation, stating that the record did not establish by clear and convincing evidence that Judge Simes should be subjected to discipline for the manner in which he conducted the Rule 11 proceedings, because his actions during the proceedings were mere legal error that were corrected on appeal in *Weaver v. City of West Helena,* 367 Ark. 159, 238 S.W.3d 74 (2006). Judge Jamison opined that the case should be dismissed; alternatively, he recommended that Judge Simes be reprimanded and not removed from office.

We must now determine whether to accept the Commission's recommended findings and recommendation of removal.

## I. *Standard of Review*

Based upon a review of the entire record, this court shall file a written opinion and judgment directing such disciplinary action as it finds just and proper. Ark. Jud. Discipline & Disability Comm'n R. 12(E) (2010). We may accept, reject, or modify in whole or in part, the findings and recommendation of the Commission. *Id.* This is a matter requiring de novo review, and we will not reverse the Commission's findings unless they are clearly erroneous. *Ark. Jud. Discipline & Disability Comm'n v. Proctor,* 2010 Ark. 38, 360 S.W.3d 61.

## II. *Rule 9(B) and Bad Faith*

Before we consider the alleged violations, we must address Judge Simes's contention that he should not be subject to discipline for legal errors he made in the *Weaver* case. Judge Simes does not dispute the procedural errors determined by this court in *Weaver;* rather, he contends that the appropriate remedy for his errors has already been provided through appellate review in the *Weaver* case.

An independent and honorable judiciary is indispensable to justice in our society. Ark.Code Jud. Conduct Canon 1. Legal scholars have noted that

> [w]hen a judge commits a legal error, it usually is a matter for appeal and does not raise a question of improper judicial conduct subject to judicial discipline. In some instances, however, legal error may amount to judicial misconduct calling for discipline ranging from admonishment to removal from office. Imposing discipline upon a judge for an incorrect legal ruling is an extremely sensitive issue because of the potential impact on judicial independence.

> An independent judge is one who is able to rule as he or she determines appropriate, without fear of jeopardy or punishment. So long as the judge makes rulings in good faith, and in an effort to follow the law as the judge understands it, the usual safeguard against error or overreaching lies in the adversary system and appellate review. As the courts have often said, the disciplinary process should not be used as a substitute for appeal. Due to the possible threat to judicial independence, it has been suggested that legal error should be dealt with only in the appellate process and never should be considered judicial misconduct.

James J. Alfini et al., *Judicial Conduct & Ethics,* § 2.02, at 2–5 (4th ed.2007) (footnotes omitted).

The Arkansas Code of Judicial Conduct is to be construed so as not to impinge on the essential independence of judges in making judicial decisions. Preamble, Ark. Code Jud. Conduct. Accordingly, pursuant to Rule 9(B) of the Rules of Procedure of the Commission,

> [i]n the absence of fraud, corrupt motive or bad faith, the Commission shall not take action against a judge for making findings of fact, reaching a legal conclusion or applying the law as he understands it. Claims of error shall be considered only in appeals from the court proceedings.

Ark. R.P. Jud. Discipline & Disability Comm'n 9(B); *see also Huffman v. Ark. Jud. Discipline & Disability Comm'n,* 344 Ark. 274, 284, 42 S.W.3d 386, 393 (2001) (Rule 9(B) "provides that no action is to be taken by the Commission for good-faith decisions on findings of fact and conclusions or applications of law because such matters are reviewed by appeal.").

■ The Commission contends that Judge Simes's conduct in the *Weaver* case may be sanctioned because he exercised his judgment in bad faith. "Bad faith," as used in Rule 9(B) is not defined in the procedural rules of the Commission. We have reviewed decisions of other jurisdictions, and we find instructive the California Supreme Court's test for |₈determining whether a judge acts in bad faith. Therefore, we adopt a modified version of that court's test as stated in *Broadman v. Commission on Judicial Performance*, 18 Cal.4th 1079, 77 Cal.Rptr.2d 408, 959 P.2d 715, 721–22 (1998), and conclude that a judge acts in bad faith only by (1) performing a judicial act with knowledge that the act is beyond the judge's lawful judicial power, or (2) performing a judicial act that exceeds the judge's lawful power with a conscious disregard for the limits of the judge's authority.[3]

Therefore, in this case, when considering alleged violations involving legal errors, we must determine whether Judge Simes (1) performed a judicial act with knowledge that the act was beyond his lawful judicial power, or (2) performed a judicial act that exceeded his lawful power with a conscious disregard for the limits of his authority.

### III. *Failure to Recuse and Rule 8*

The Commission concluded that, in failing to recuse from conducting Rule 11 proceedings against Murray and Weaver, Judge Simes violated Canons 2(A) and 3(B)(1). Specifically, the Commission found that

[d]ue to the personal nature of the allegations in the motion for recusal, which resulted in the court-initiated Rule 11 sanctions, and the fact that Judge Simes viewed the motion for recusal as a personal attack by Murray and Weaver, Judge Simes should have recused from the Rule 11 proceedings or explored the alternative of transferring the *Weaver* case to Judge Yates.

### |₉A. Rule 8

Before determining whether Judge Simes violated Canons 2(A) and 3(B)(1) by failing to recuse, we must consider his argument that the Commission failed to provide notice of this charge, in violation of Rule 8(E), (G) of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission. Rule 8(E) provides in relevant part:

When a sworn complaint is not obtained, a clear statement of the allegations against the judge and the alleged facts forming their basis shall be prepared by the executive officer.

When more than one act of misconduct is alleged, each should be clearly set forth in the sworn complaint or in the statement in lieu of the complaint, as the case may be.

Rule 8(G) provides that "[t]he judge shall immediately be served with a copy of the sworn complaint or statement of allegations."

Judge Simes claims that nowhere in the record is there evidence that he was given notice that he faced a charge of misconduct in violation of Canons 2(A) and 3(B)(1) because he did not recuse from conducting the Rule 11 proceedings against Murray and Weaver. He is cor-

---

**3.** We omitted the part of the *Broadman* test providing that a judge acts in bad faith by "performing a judicial act for a corrupt purpose (which is any purpose other than the faithful discharge of judicial duties)," 77 Cal. Rptr.2d 408, 959 P.2d at 721, because Rule 9(B) already provides that the Commission may take action against a judge who has exercised his or her judgment for a corrupt motive, *see* Ark. R.P. Jud. Discipline & Disability Comm'n 9(B).

rect. The Statement of Allegations in this case did not include factual allegations accusing him of failing to recuse from the Rule 11 proceedings or failing to explore the alternative of transferring the case to Judge Yates. In addition, the panel's pretrial order, issued April 9, 2010, limited the issues to findings of legal error as determined by this court in *Weaver.*

This court has recognized that state judges have protected due-process rights, the basic components of which are fairness, meaningful notice of charges, and a meaningful opportunity to defend oneself. *See Anderson v. State,* 266 Ark. 192, 583 S.W.2d 14 (1979). Here, in violation of Rule 8, the Commission failed to provide notice to Judge Simes that he would face a charge of misconduct because he did not recuse from the Rule 11 proceedings. Recently, this court made it clear that we were

> troubled by the Commission's repeated failure to follow its own rules, as evidenced in this opinion and in *Simes,* [2009 Ark. 543, 354 S.W.3d 72] and we, therefore, take this opportunity to caution the Commission to follow its rules as written. While to date the Commission's noncompliance has not resulted in a violation of a judge's rights, the Commission should take pains in the future to follow its rules and to document its actions so as to preclude future allegations of rule violations and to better facilitate this court's review of alleged rule violations if and when those allegations are made.

*Proctor,* 2010 Ark. 38, at 41–42 n. 14, 360 S.W.3d 61.

■ In this case, Judge Simes's due-process rights were violated when he was given no notice that he faced a charge for failing to recuse from the Rule 11 proceedings or failing to explore the alternative of transferring the case to Judge Yates. Because Judge Simes did not receive meaningful notice of the charge, we reject the Commission's finding that Judge Simes's failure to recuse from conducting the Rule 11 proceedings against Murray and Weaver or failing to explore the alternative of transferring the case to Judge Yates violated Canons 2(A) and 3(B)(1).

## IV. *De Facto Rule 11 Hearing*

■ The Commission concluded that Judge Simes subjected Murray and Weaver to a de facto Rule 11 hearing, of which they were given no notice, in violation of Canons 2(A) and 3(B)(1).

### A. Canon 2(A)

Pursuant to Canon 2(A), "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." At the disciplinary hearing, Murray testified that, during the *Weaver* proceedings, he knew Judge Simes was angry about the motion for recusal and he feared a contempt citation, but he never realized at the January 6, 2005 hearing that Judge Simes was considering imposing Rule 11 sanctions. Murray also testified that at the January 26, 2005 TRO hearing, he had been given "no clear statement" from Judge Simes that Rule 11 sanctions were being considered. For his part, Judge Simes testified that he believed he had given notice to Murray and Weaver that he was considering Rule 11 sanctions against them because "practically every day we had the hearing I mentioned Rule 3.1 [4] and Rule

---

4. Rule 3.1 of the Arkansas Rules of Professional Conduct (2006) provides in pertinent part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."

11. It wasn't just on one occasion." The Commission found that,

> [a]lthough Judge Simes mentioned Rule 11 and read Model Rules of Professional Conduct 3.1 several times in the January 6 hearing, he did not give Murray notice that he was going to conduct a Rule 11 proceeding the following day.
>
> The hearing on the motion to recuse commenced for a second day on January 7, 2005, and Judge Simes began the hearing by reading Rule 11 of the Arkansas Rules of Civil Procedure and Rule 3.1 of the Model Rules of Professional Conduct into the record.
>
> Despite the fact that Judge Simes stated twice that he was there to hear a motion on recusal, he proceeded to initiate a Rule 11 proceeding, sua sponte, without giving notice to Murray or Weaver.

The Commission states that clear and convincing evidence showed that the Rule 11 hearing was commenced without notice to Murray and without a reasonable opportunity for him to defend against the unstated charges. We agree. But, because the Commission's finding of a violation of Canon 2(A) involves a legal error, we must determine whether Judge Simes acted in bad faith. That is, we must determine whether Judge Simes conducted the hearing without notice (1) with knowledge that the judicial act was beyond his lawful judicial power or (2) that the judicial act exceeded his lawful power with a conscious disregard for the limits of his authority. After reviewing the record, we are not persuaded that there is clear and convincing evidence that Judge Simes conducted the hearing without notice with knowledge that the act exceeded his lawful judicial power or that the act exceeded his lawful power with a conscious disregard for the limits of his authority. Accordingly, we hold that the Commission's finding that Judge Simes subjected Murray and Weav-

er to a de facto Rule 11 hearing, for which they were given no notice, in violation of Canon 2(A) is clearly erroneous, and we reject it.

### B. Canon 3(B)(2)

Canon 3(B)(2) provides in relevant part that "[a] judge shall be faithful to the law and maintain professional competence in it." It is clear from the record that Judge Simes was not faithful to the law when he failed to give proper notice to Murray and Weaver. But, as previously discussed with respect to Canon 2(A), Judge Simes is not subject to discipline for this legal error because there is not clear and convincing evidence that he acted in bad faith. Therefore, we hold that the Commission's finding that Judge Simes subjected Murray and Weaver to a de facto Rule 11 hearing, for which they were given no notice, in violation of Canon 3(B)(2) is clearly erroneous, and we reject it.

### V. *Falsity of the Allegations*

The Commission concluded that Judge Simes conducted the Rule 11 proceedings before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish the allegations were false. It further concluded that, because Judge Simes was the subject of the allegations, it was improper for him to conduct the Rule 11 proceedings, in violation of Canons 2(A) and 3(B)(2), (7). Because we have already concluded that Judge Simes was not given notice that he would face a charge for failing to recuse from the Rule 11 proceedings, we will consider only whether Judge Simes conducted the Rule 11 proceedings before the court attempted to establish the falsity of the allegations for recusal and that the court ultimately failed to establish

that the allegations were false, in violation of Canons 2(A), 3(B)(2), (7).

## A. Canon 2(A)

■ Canon 2(A) provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." In *Weaver*, we stated that the procedural requirements for Rule 11 were disregarded by Judge Simes, specifically noting that the "hearing occurred before the court attempted to establish the falsity of the allegations in the motion for recusal." 367 Ark. at 165, 238 S.W.3d at 79. Judge Simes did not comply with the law, nor did he act in a manner that promotes public confidence in the integrity and impartiality of the judiciary. To ascertain whether this legal error amounts to judicial misconduct, we must determine whether Judge Simes acted in bad faith. A review of the *Weaver* record reveals that Judge Simes knew he had to address the recusal motion before proceeding to other matters. Moreover, at the disciplinary hearing, Judge Simes testified that his "understanding of the case law is that if there's a motion for recusal filed the court has to first take up that issue and determine whether or not the recusal should be granted." Nevertheless, he conducted the Rule 11 proceedings before disposing of the recusal motion. In doing so, Judge Simes performed a judicial act with knowledge that the act was beyond his lawful judicial power; therefore, he acted in bad faith. The Commission's finding that Judge Simes conducted the Rule 11 proceedings before the court attempted to determine the falsity of the allegations and ultimately failed to establish that the allegations were false, in violation of Canon 2(A), is not clearly erroneous, and we accept it.

## B. Canon 3(B)(2)

■ Canon 3(B)(2) provides in relevant part that "[a] judge shall be faithful to the law and maintain professional competence in it." Judge Simes failed to remain faithful to the law when he did not determine the falsity of the allegations in the recusal motion before conducting the Rule 11 hearing. The *Weaver* record and Judge Simes's testimony at the disciplinary hearing demonstrate that Judge Simes knew he was required to address the recusal motion before conducting the Rule 11 hearing; even so, he conducted the Rule 11 hearing before ruling on the recusal motion. In doing so, Judge Simes performed a judicial act with knowledge that the act was beyond his lawful judicial power. The Commission's finding that Judge Simes conducted the Rule 11 proceedings before the court attempted to determine the falsity of the allegations and ultimately failed to establish that the allegations were false, in violation of Canon 3(B)(2), is not clearly erroneous, and we accept it.

## C. Canon 3(B)(7)

■ Canon 3(B)(7) provides, in relevant part, that "[a] judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law." In its findings and recommendation, the Commission directs the court to the Commentary to Canon 3(B)(7), which states that "[a] judge must not independently investigate facts in a case and must consider only the evidence presented." Our review of the record reveals no clear and convincing evidence that Judge Simes independently investigated facts in the case or considered evidence that was not presented. Accordingly, we conclude that the Commission's finding that Judge Simes conducted the Rule 11 proceedings before the court attempted to establish the falsity of the alle-

gations for recusal, in violation of Canon 3(B)(7), is clearly erroneous, and we reject it.

## VI. *Facial Expression and Body Language*

■ The Commission concluded that, in his conduct of the hearing on the motion for recusal, which the following day became a Rule 11 proceeding, Judge Simes's facial |₁₆expression and body language toward Murray gave an appearance of judicial bias, in violation of Canon 3(B)(5). Canon 3(B)(5) provides, in relevant part, that "[a] judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice."

At the January 6, 2005 hearing in *Weaver*, Murray told Judge Simes, "I just want to state for the record that, you know, your demeanor and your facial expressions toward me are very hostile at this point." Murray testified at the disciplinary hearing that Judge Simes "indicated hostility" by raising his voice several times during the *Weaver* proceeding.

The Statement of Allegations in this case did not include factual allegations that Judge Simes's facial expression and body language toward Murray gave an appearance of judicial bias. Moreover, the panel's pretrial order limited the issues to findings of legal error as determined by this court in *Weaver*. In violation of Rule 8 of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission, the Commission failed to provide Judge Simes notice of this charge of judicial bias. Therefore, we reject the Commission's finding that Judge Simes's facial expression and body language toward Murray gave an appearance of judicial bias in violation of Canon 3(B)(5).

## VII. *Reliance Upon Improper Bases in Imposing Sanctions*

The Commission concluded that Judge Simes relied upon improper bases in his order imposing sanctions, in that he not only used written allegations that Murray had withdrawn prior to the decision on sanctions, but also considered oral statements made by Murray and |₁₇Weaver in making his determination on the sanctions. Additionally, the Commission concluded that Judge Simes misrepresented the testimony of Murray in his order when he found that Murray admitted to "judge shopping" when he responded to Judge Simes's statement that there was an issue in this case about judge shopping. Therefore, the Commission concluded that Judge Simes's conduct violated Canons 1 and 3(B)(2). In *Weaver*, we concluded that Judge Simes committed legal error when, in sanctioning Murray and Weaver, he relied on an allegation withdrawn by Murray and he misrepresented Murray's testimony about judge shopping. We did not state that Judge Simes erroneously considered oral statements made by Murray and Weaver. Therefore, we confine our review to whether Judge Simes violated Canons 1 and 3(B)(2) when, in imposing sanctions, he relied upon an allegation Murray had withdrawn and misrepresented Murray's testimony about judge shopping.

### A. Canon 1

■ Pursuant to Canon 1, "[a]n independent judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." The Commission asserts that, in relying upon improper bases in imposing sanctions,

Judge Simes failed to uphold the integrity and independence of the judiciary.

By relying on a withdrawn allegation and misrepresenting Murray's testimony, Judge Simes did not uphold the integrity and independence of the judiciary. Because the Commission's finding of a violation of Canon 1 involves a legal error, we must determine whether Judge Simes acted in bad faith.

At the disciplinary hearing, Judge Simes testified that he imposed sanctions because Murray "had not properly verified things listed in the pleadings, and they were false." Judge Simes acknowledged that Murray eventually withdrew one of the allegations, but he stated that Murray did so "much after the fact."

Judge Simes stated that he believed that Murray and Weaver filed the recusal motion in an attempt to judge shop and that as the proceeding evolved, "it became more and more evident that Mr. Murray had not properly prepared. He indicated that he'd done no investigation to confirm or to verify the allegations in the recusal motion. He could not tell me of one single thing he had done to verify the allegations about me."

Based on the record before us in *Weaver,* we stated that it "appear[ed] that Judge Simes ha[d] violated the Arkansas Code of Judicial Conduct." 367 Ark. at 165, 238 S.W.3d at 79. Now, after reviewing both the *Weaver* record and the disciplinary-hearing record, we cannot say that there is clear and convincing evidence that Judge Simes acted in bad faith when he relied on improper bases for imposing sanctions. Therefore, we hold that the Commission's finding that Judge Simes relied upon improper bases in imposing sanctions, in violation of Canon 1, is clearly erroneous, and we reject it.

### B. Canon 3(B)(2)

Canon 3(B)(2) provides, in relevant part, that "[a] judge shall be faithful to the law and maintain professional competence in it." Judge Simes failed to remain faithful to the law when he relied on improper bases for imposing sanctions. But, as previously discussed with respect to Canon 1, Judge Simes is not subject to discipline for this procedural error because there is not clear and convincing evidence that he acted in bad faith. Accordingly, we hold that the Commission's finding that Judge Simes relied upon improper bases for imposing sanctions, in violation of Canon 3(B)(2) is clearly erroneous, and we reject it.

### VIII. *Retaliatory Proceeding*

In his pretrial motion to dismiss and his brief before this court, Judge Simes asserts that the Commission's disciplinary proceeding was a bad-faith, retaliatory proceeding brought to prevent him from being elected and serving again as circuit judge. In support of his argument, Judge Simes points to an article that appeared in the *Arkansas Democrat–Gazette* on November 6, 2009, after this court handed down its opinion in a prior disciplinary action involving Judge Simes, *see Jud. Discipline & Disability Comm'n v. Simes,* 2009 Ark. 543, 354 S.W.3d 72 (rejecting the Commission's recommendation that Judge Simes be removed from office based on its findings that he had violated canons of the Arkansas Judicial Code of Conduct and instead suspending him from the bench, without pay, until the end of his then current term). The article stated,

David Stewart, executive director of the Judicial Discipline and Disability Commission, said that since the court didn't bar Simes from running for judge again, the commission would move forward

with two outstanding cases having to do with misconduct.

No dates have been set yet on any disciplinary hearings related to those matters, which include accusations of improperly pressuring the Helena–West Helena mayor to reinstate a fired police chief and of ordering a newspaper not to write a story, and a [20]matter in which Simes is said to have attempted to prevent people from talking to the commission, Stewart said.

Charlie Frago, *Justices Suspend Simes,* Ark. Democrat–Gazette, Nov. 6, 2009, at A1.

In response to Judge Simes's assertion, the Commission found that

> [t]he statement made by Executive Director David Stewart on November 5, 2009, after the disposition of the Chandler case by the Arkansas Supreme Court, that since the court did not bar Simes from running for judge again, the Commission would move forward with two outstanding cases having to do with misconduct *(Arkansas Democrat–Gazette,* "Justices Suspend Simes," November 6, 2009) is not evidence of any retaliatory motive by the JDDC in disposing of the pending cases against Judge Simes.

The Commission's finding is not clearly erroneous. There is no evidence of a retaliatory motive on the part of the Commission. Moreover, the Commission was obligated to consider the referral made by this court in *Weaver.*

In conjunction with his retaliatory-motive argument, Judge Simes asserts that the panel abused its discretion in refusing to allow Stewart to testify at the hearing. At the hearing, Judge Simes called as his first witness David Stewart, Executive Director of the Commission. Counsel for the Commission objected, and the panel sustained the objection on the ground that

Judge Simes had not included Stewart on his witness list. Judge Simes states that Stewart was a necessary witness with respect to the claim that this disciplinary proceeding was retaliatory. He also states that, in his support of his due-process claims, he called Stewart to testify about the rules governing the Commission. The Commission asserts that, because Judge Simes failed to use customary procedures to identify Stewart as a potential witness, he waived any claim based upon the panel's refusal to allow counsel for Judge Simes to question Stewart. We agree.

[21]Judge Simes failed to comply with the pretrial-order directive that the "[p]re-trial brief shall contain ... "[n]ames, addresses and telephone numbers of any witnesses who *MIGHT* testify." Moreover, the Commission was informed of Judge Simes's intent to call Stewart for the first time at the disciplinary hearing. We hold that the panel did not abuse its discretion in refusing to allow Judge Simes's counsel to question Stewart.

### IX. *Delay in Proceedings*

Judge Simes takes issue with the Commission's finding that, despite the unexplained reasons for delay in processing this case, Judge Simes "was afforded due process and basic fairness." The instant case was referred to the Commission on June 29, 2006, and Judge Simes was served with the Notice of Formal Disciplinary Hearing and Statement of Allegations on March 23, 2010. Although part of the delay in the proceedings was due to continuances granted at Judge Simes's request, the Commission admits that "[i]naction on this case between August 7, 2006, and July 18, 2008, during the term of the JDDC's previous Director, is unexplained." In a pretrial brief, counsel for the Commission admitted that the case had "languished without action" during that time,

that there was no explanation for the delay, and that, if the case had been filed under the current rules of procedure of the Commission, then it would have been dismissed with prejudice. *See* Ark. R.P. Jud. Discipline & Disability Comm'n 15 (2010) ("A sworn complaint shall be dismissed if not disposed of as provided in these Rules within 18 months from receipt of the complaint by the Commission.").

While we do not look with favor on the delay, the Commission's inaction on the case was not proscribed by the 2006 rules. Moreover, Judge Simes's argument on this point is |₂₂unsupported and undeveloped. He simply states that, due to the delay, "[t]his case should have been dismissed for laches and in the interest of justice." In previous judicial-discipline cases, this court has declined to address due-process challenges when they were not sufficiently developed with citation to authority. *See Jud. Discipline & Disability Comm'n v. Simes,* 2009 Ark. 543, 354 S.W.3d 72; *Jud. Discipline & Disability Comm'n v. Thompson,* 341 Ark. 253, 16 S.W.3d 212 (2000). Additionally, Judge Simes demonstrates no prejudice to him caused by this delay. As such, we find no merit in Judge Simes's due-process argument on this point.

### X. *Restrictions on Cross–Examination*

▮ Judge Simes asserts that the panel abused its discretion in restricting his counsel's cross-examination of Murray. At the hearing, counsel for Judge Simes attempted to question Murray about a dispute at the police station involving the then former and current police chiefs that occurred a day before Judge Simes issued the TRO reinstating Bell and restraining Weaver from interfering in the day-to-day operations of the police department. The panel sustained an objection to the question, finding that any question about the

TRO was irrelevant. The panel also sustained an objection to further questions regarding Murray's testimony that the *Weaver* case was a political situation and instructed Judge Simes's counsel to "move on to another subject."

Judge Simes asserts that the limitations placed on cross-examination denied him an opportunity to impeach Murray by showing that his motion to recuse was not made in good faith and was not well grounded, in part because Murray had knowledge of the confrontation at the police station. Further, Judge Simes asserts that the limitation denied him an |₂₃opportunity to demonstrate that he acted in good faith with regard to his conduct and rulings in the *Weaver* proceedings. The record reveals that counsel made no proffer as to what testimony Murray would have provided.

The Commission contends that Judge Simes's argument is not preserved for review because he failed to "make a record following the panel's ruling that the question was outside the scope of the hearing issues." We agree.

The Arkansas Rules of Evidence apply to formal disciplinary hearings of the Commission. Ark. R.P. Jud. Discipline & Disability Comm'n 11(D). To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so the appellate court can review the decision, unless the substance of the evidence is apparent from the context within which the questions were asked. Ark. R. Evid. 103(a)(2) (2010). In this case, because the substance of the evidence is not apparent and because counsel failed to proffer the excluded evidence, we are unable to review the Commission's rulings excluding the evidence.

### XI. *Sanction*

▮ We must now determine the appropriate sanction and decide whether to

accept the Commission's recommendation of Judge Simes's removal. This court has recognized certain factors to be considered in determining the appropriate sanction for judicial misconduct, including (1) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (2) the nature, extent, and frequency of occurrence of the acts of misconduct; (3) whether the misconduct occurred in or out of the courtroom; (4) whether the misconduct occurred in the judge's official capacity or in his private life; (5) whether the judge has acknowledged or recognized that the acts occurred; (6) whether the judge has evidenced an effort to change or modify his conduct; (7) the length of time of service on the bench; (8) whether there have been prior complaints about this judge; (9) the effect the misconduct has upon the integrity of and respect for the judiciary; and (10) the extent to which the judge exploited his position to satisfy his personal desires. *Thompson, supra.*

In the case before us, the misconduct regarding Judge Simes's handling of the Rule 11 sanctions does not evidence a pattern of conduct. The misconduct occurred in the courtroom while Judge Simes was serving in his official capacity. While Judge Simes strongly disputes the testimony of Murray, he does not take issue with the determinations of legal error made by this court in *Weaver.*

At the time of this writing, Judge Simes will have served as a circuit judge since January 1, 1997. Judge Simes has a history of sanctions against him. On October 15, 2004, Judge Simes received a Public Informal Adjustment from the Commission because he appeared in his robes on the cover of a music CD he sold for profit, which was an exploitation of his position to satisfy personal desires. On May 23, 2006, the Commission filed a Letter of Admonishment against Judge Simes for personal-ly soliciting campaign funds during his 2004 reelection campaign. On November 21, 2008, Judge Simes received a Letter of Reprimand from the Commission for failing to enter an order promptly in an election case. Finally, in *Judicial Discipline & Disability Commission v. Simes,* 2009 Ark. 543, 354 S.W.3d 72, this court accepted the Commission's findings that Judge Simes violated (1) Canon 4(G) of the Code of Judicial Conduct by engaging in the practice of law while he was a circuit judge; (2) Canon 4(E) by serving as a fiduciary of an estate of someone other than a family member; and (3) Canon 2 by failing to avoid impropriety or the appearance of impropriety. We rejected the Commission's recommendation of removal and suspended Judge Simes from the bench, without pay, until the end of his then current term, which was December 31, 2010.

Based on our acceptance of the Commission's findings that Judge Simes violated Canons 2A and 3(B)(2), we order that Judge Simes be reprimanded. Pursuant to Arkansas Judicial Discipline & Disability Commission Rule 12(E), we direct that no motion for rehearing will be entertained and that this decision shall be final upon filing.

Recommended findings accepted in part, modified in part, rejected in part; recommendation of removal rejected; reprimand ordered.

BAKER, J., concurs in part; dissents in part.

KAREN R. BAKER, Justice, concurring in part and dissenting in part.

I agree with the majority that Judge Simes was given no notice of allegations not contained in this court's referral in *Weaver v. City of West Helena,* 367 Ark. 159, 238 S.W.3d 74 (2006). However, be-

cause I would hold that the Judicial Discipline & Disability Commission ("Commission") clearly erred in finding that Judge Simes violated the Code of Judicial Conduct on the remaining allegations, I dissent in part.

At the conclusion of the final hearing on January 26, 2005, Judge Simes stated "I had planned to read into the record the court's decision in its entirety as it relates to the question of recusal, but the court's calendar simply has not permitted me to complete it. Notwithstanding that, the court is denying the motion to recuse." On April 28, 2005, an order was entered denying the motion for recusal and imposing sanctions under Ark. R. Civ. P. 11 for the reasonable fees and costs expended by the City of West Helena in responding to the motion for recusal. That order was appealed to this court and reversed in *Weaver v. City of West Helena, supra.*

In *Weaver,* this court determined that Judge Simes conducted a de facto Rule 11 hearing without notice to Murray and Weaver and stated that "no separate motion for sanctions was made in this case, and such a motion is required by Rule 11 before sanctions may be imposed." This is simply wrong.

Rule 11 states that "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction." Ark. R. Civ. P. 11(a). That Rule 11 provides for a court to determine if sanctions are warranted absent a motion is consistent with the trial court's inherent authority to protect the integrity of the proceedings in actions pending before it. *City of Fayetteville v. Edmark,* 304 Ark. 179, 801 S.W.2d 275 (1990). Federal courts have addressed this issue, and this court has relied upon federal opinions interpreting Rule 11. *See*

*Chlanda v. Killebrew,* 329 Ark. 39, 945 S.W.2d 940 (1997). In *Katz v. Looney,* 733 F.Supp. 1284 (W.D.Ark.1990), the court stated that no hearing was required, and on its own initiative, imposed Rule 11 sanctions against a litigant for scandalous and libelous statements made against a party, a magistrate, and the trial judge who imposed the sanctions. *Weaver* incorrectly interprets Rule 11 and should be overruled.

The notice requirement found in subsection (b) applies to a motion for sanctions and requires that a motion for sanctions be served as provided in Rule 5, but not filed with the court unless within 21 days of service the challenged allegation is not withdrawn or corrected. *See* Ark. R. Civ. P. 11(b). Plainly, subsection (b) does not apply to the court acting on its own initiative.

Even if *Weaver* were correct in holding that a trial court must give notice and "attempt to establish the falsity of the allegations" before conducting a hearing or imposing sanctions, *Weaver* was the first case to so hold. Thus, Judge Simes' failure to file a motion, serve it on Murray and Weaver, and attempt to establish the falsity of the allegations before holding a hearing on Rule 11 sanctions is at most an abuse of discretion. When this court has previously found that a trial court abused its discretion in ruling on motions for Rule 11 sanctions, the trial judges were not referred to the Commission. *See Williams v. Martin,* 335 Ark. 163, 980 S.W.2d 248 (1998); *Crockett & Brown, P.A. v. Wilson,* 321 Ark. 150, 901 S.W.2d 826 (1995). In fact, the case relied on in *Weaver* for referring Judge Simes to the Commission, *Walls v. State,* 341 Ark. 787, 20 S.W.3d 322 (2000), did not involve Rule 11 sanctions, and the trial judge in that case was not referred to the Commission.

The majority contends that Judge Simes knew that he was supposed to address the recusal motion before proceeding to the Rule 11 issues and that his failure to do so demonstrates bad faith. Judge Simes did state several times that he was aware that he needed to determine the motion for recusal before he returned to the other matters in the case. Judge Simes did not state that he knew he needed to issue a ruling on the record before proceeding on Rule 11. The proponent of a motion is responsible for obtaining a ruling. *Ligon v. Rees*, 2010 Ark. 223, 364 S.W.3d 19. The allegations in the motion for recusal were the same allegations giving rise to possible Rule 11 sanctions so that evidence concerning the allegations related to both Rule 11 and recusal. There was simply no reason that Judge Simes should not hear evidence concerning both at the same time. The April 28, 2005 order refuted each allegation made in the motion for recusal and accurately reflected the evidence.

Likewise, I cannot agree with the majority that Judge Simes committed legal error by relying upon a withdrawn allegation or that he misrepresented Murray's testimony in awarding sanctions under Rule 11. At the January 6 and 7 hearings, it was clear that the allegation that Judge Simes had entered a TRO despite knowing that a connected case was pending before another judge was based solely on the fact that the pleadings were filed with the circuit clerk. Yet it was not until January 13, 2005, a week after hearings on two separate days regarding the motions, that Murray withdrew that allegation. Because Murray failed to withdraw the allegation in a timely manner, I cannot say that Judge Simes erred in considering the allegation in imposing sanctions under Rule 11.

The majority also holds that Judge Simes committed legal error by misrepresenting Murray's testimony regarding "judge shopping." In his thirty-one-page order, Judge Simes found that Murray admitted that there was an issue of judge shopping on both sides. The record supports this finding; although, Murray also said "we weren't judge shopping." Relying on *Weaver, supra*, the majority now holds that Judge Simes erred by misrepresenting Murray's testimony. I disagree. Judge Simes' order merely stated that Murray admitted that judge shopping was "an issue" in the case on both sides. This is the plain truth. It is not a misrepresentation, as asserted in *Weaver*.

On this record, I would find no violation of the Code of Judicial Conduct.