# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3564

_____

L. T. Simes, II

*Plaintiff - Appellant*

v.

Arkansas Judicial Discipline and Disability Commission; John Everett, individual and official capacity as member of the Arkansas Judicial Discipline and Disability Commission; H. William Allen, individual and official capacity as member of the Arkansas Judicial Discipline and Disability Commission; Reginald Duane Hamman, individual and official capacity as member of the Arkansas Judicial Discipline and Disability Commission; William A. Story, individual and official capacity as member of the Arkansas Judicial Discipline and Disability Commission; Chris E. Williams, individual and official capacity as member of the Arkansas Judicial Discipline and Disability Commission; David Stewart, individual and official capacity as member of the Arkansas Judicial Discipline and Disability Commission

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 25, 2013
Filed: October 31, 2013

_____

Before RILEY, Chief Judge, BRIGHT and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

L.T. Simes, II, is the first African-American circuit court (trial court) judge elected in Phillips County, Arkansas. During disciplinary proceedings against him before the Arkansas Judicial Discipline and Disability Commission (commission), Simes filed a federal lawsuit, pursuant to 42 U.S.C. § 1983, against the commission and six of its officials: five commissioners and Executive Director David Stewart (collectively, officials).[1] The district court[2] denied Simes' request for a temporary restraining order and stayed federal proceedings in accordance with the Younger abstention doctrine, see Younger v. Harris, 401 U.S. 37 (1971). The state disciplinary proceedings ended with a decision by the Arkansas Supreme Court (1) accepting the commission's findings that Simes violated two canons of the Arkansas Code of Judicial Conduct; (2) rejecting the commission's findings that Simes violated four other canons; and (3) ordering the commission to reprimand Simes. See Ark. Judicial Discipline & Disability Comm'n v. Simes, 381 S.W.3d 764, 769, 779 (Ark. 2011) (Simes II). The district court then granted the commission and officials' Fed. R. Civ. P. 12(b) motion to dismiss, finding no justiciable federal controversy. Considering Simes' appeal pursuant to 28 U.S.C. § 1291, and reviewing the record and the district court's well-reasoned opinions, we affirm.

---

[1]Although Simes initially named three other commissioners and nine alternate members of the commission as defendants, he later dropped his suit against them, leaving only the "Defendants-Appellees" listed above as parties to this case.

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation following the recusals of all district judges in the Eastern and Western Districts of Arkansas.

-2-

# I.   BACKGROUND

## A.   Arkansas State Proceedings

Simes alleges the following facts.[3]  Since 1997, Simes has been an elected trial level judge in Phillips County, Arkansas.  Voters re-elected him in 2000, 2004, and 2010.  Simes' judicial career did not lead him to renounce his extrajudicial activities as a "successful business man [sic]," notably co-owning a local radio station and producing a CD of religious music (composed and sung by Simes himself).

Between 2004 and 2007, more complaints were filed against Simes "than any other judge under the jurisdiction of the Commission."  During this period, the commission sanctioned Simes twice, once "for appearing in his judicial robes on the cover of a CD he produced" and once for "'making personal solicitations for campaign contributions' during his 2004 election."  In early 2008, the commission notified Simes the commission would hold probable cause hearings in five of the pending complaints against him.  Simes agreed to a letter of reprimand in one of the complaints, based upon his two-month delay in entering an order after having ruled from the bench in a time-sensitive election dispute.  See Judicial Discipline & Disability Comm'n, Letter of Reprimand, Case No. 07-259 (2008).  The commission dismissed one of the complaints (No. 07-142), and found probable cause for disciplinary hearings on the remaining three complaints (Nos. 06-171, 05-112, and 05-123).

The first case to proceed to a disciplinary hearing was number 06-171, referred to by Simes as the "Chandler case."  Proceedings took place in early 2009, and the commission recommended the Arkansas Supreme Court "permanently remove[] [Simes] from his position as Circuit Judge for practicing law and serving as a

---

[3]As this appeal arises from a dismissal on the pleadings, we present these facts on the assumption that the allegations in Simes' complaint are true.  See, e.g., U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 555 (8th Cir. 2006).

fiduciary while on the bench." In Judicial Discipline & Disability Comm'n v. Simes, 354 S.W.3d 72 (Ark. 2009) (Simes I), the Arkansas Supreme Court unanimously agreed with the commission that Simes "created the appearance, in reasonable minds, that [he] was unable to perform his duties with integrity, impartiality, and competence." Id. at 79; see id. at 85 (Hannah, C.J., concurring and dissenting); id. at 87 (Danielson, J., concurring and dissenting). The Arkansas Supreme Court also found Simes improperly "engaged in the practice of law" and "served as a fiduciary . . . while he was a judge."[4] Id. at 78-79 (majority opinion). Although two justices would have permanently removed Simes from the bench, see id. at 85 (Hannah, C.J., concurring and dissenting), the majority voted to suspend Simes without pay until the end of his term, allowing him to run for re-election and, if re-elected, resume his judicial duties. See id. at 85.

The remaining two complaints, numbers 05-112 and 05-123, which both arose from what Simes calls "the Weaver case," were "merged on November 21, 2008 for a disciplinary hearing." Hearings on these complaints occurred in 2010, leading to a second recommendation for Simes' removal based on six violations of Arkansas' judicial code. The Arkansas Supreme Court upheld two and rejected four of the violations based in part upon procedural irregularities related to other charges that Simes should not have personally overseen proceedings in which he *sua sponte* sanctioned parties for requesting his recusal. See Simes II, 381 S.W.3d at 772, 774, 779.

## B.   Federal Proceedings

On July 23, 2010, amid ongoing disciplinary proceedings in "the Weaver case," Simes filed a federal complaint in the Eastern District of Arkansas and moved for a

---

[4]The conduct which led to this finding also earned Simes a "caution" sanction for his legal work from the Arkansas Supreme Court Committee on Professional Conduct, which required Simes to pay "restitution of legal fees" to the affected party.

temporary restraining order. The district court denied Simes' TRO motion on July 27, 2010, finding none of the four temporary injunction factors weighed in Simes' favor. Faced with a motion to dismiss, Fed. R. Civ. P. 12(b)(1), (2), & (4)-(6), the district court stayed proceedings, finding Younger abstention was warranted to avoid interference with ongoing state proceedings.

After the state proceedings ended with a reprimand order in Simes II, Simes amended his federal complaint. His amended complaint asserted two causes of action under 42 U.S.C. § 1983 related to the commission's handling of the many judicial complaints filed against him. The first cause of action alleged the commission and officials "targeted [Simes] for permanent removal" based on his race in violation of the U.S. and Arkansas Constitutions and state law. The second cause of action, directed solely against Stewart, alleged "false and intentionally defamatory statements" in violation of the "First and Fourteenth Amendments to the Constitution of the United States . . . and State law as well." According to Simes, "Stewart announced publicly that [Simes] had been accused of ordering a newspaper reporter not to write a story, of improperly pressuring a Mayor of Helena-West Helena to reinstate a fired employee, and attempting to prevent people from talking to the Commission." Simes demanded declaratory judgment relief, injunctions, compensatory and punitive damages, and legal fees. The commission and officials promptly moved to dismiss.

On September 27, 2012, the district court granted the defendants' motion and dismissed the case. The district court found all the defendants were entitled to immunity from damages: the commission, a state entity, by virtue of the Eleventh Amendment of the U.S. Constitution; the commissioners by virtue of the Eleventh Amendment and their quasi-judicial capacities; and Stewart by virtue of his prosecutorial capacity. As to non-monetary relief, the district court found Simes' allegations, even if true, presented no justiciable federal controversy because they centered on past conduct. As to Simes' second cause of action against Stewart, the

district court found the allegations did not "state[] a claim cognizable under federal law." The court declined to exercise jurisdiction over any state law claim Simes might have against Stewart. Accordingly, the district court entered judgment in favor of the commission and officials. Simes appeals.[5]

## II. DISCUSSION

"We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir. 2012) (per curiam). The district court's decision under 28 U.S.C. § 1367(c) not to exercise supplemental jurisdiction over state law claims is reviewed for abuse of discretion. See, e.g., Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 359 (8th Cir. 2011).

### A. First Cause of Action

The district court, applying settled and straightforward principles, concluded Stewart is entitled to prosecutorial immunity for his involvement in Simes' disciplinary proceedings. This absolute immunity applies to the first cause of action against Stewart.

On appeal, Simes attempts to couch Stewart's essentially prosecutorial work—screening complaints and determining which ones merited further action—as administrative functions not covered by prosecutorial immunity. Cf. Imbler v. Pachtman, 424 U.S. 409, 424-25 (1976). Deciding which allegations to charge is the heart of prosecutorial discretion, absolutely protected by immunity. See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 274 n.5 (1993) (noting absolute immunity applies to "a prosecutor's decision to bring an indictment, whether he has probable

---

[5]Simes' appeal does not challenge the district court's conclusion the commission and commissioners are immune from suit for damages.

-6-

cause or not"). Stewart's role in choosing which of the many complaints against Simes to pursue was "functionally comparable to that of a prosecutor." <u>Thomason v. SCAN Volunteer Servs., Inc.</u>, 85 F.3d 1365, 1373 (8th Cir. 1996). Therefore, Stewart is entitled to absolute prosecutorial immunity as to Simes' claims for damages on the first cause of action.

## B.    Second Cause of Action

Although prosecutorial immunity does not absolutely shield statements to the press, <u>see</u> <u>Buckley</u>, 509 U.S. at 277-78, the district court (1) found Simes' second cause of action offered no prospect of damages because the relevant allegations "amount[ed] to nothing more than a state law defamation claim," and (2) declined to "exercise its discretion to assume supplemental jurisdiction over that claim."

As to the first point, the district court was correct. Looking at Simes' complaint, there is no reason to think Stewart's statements to the media, even if inaccurate, had a chilling effect on Simes' exercise of his First Amendment rights. <u>See</u>, <u>e.g.</u>, <u>Laird v. Tatum</u>, 408 U.S. 1, 13-14 (1972). Nor is there any basis for inferring Stewart's statements violated Simes' Fourteenth Amendment rights. <u>See</u>, <u>e.g.</u>, <u>Paul v. Davis</u>, 424 U.S. 693, 712 (1976).

As to the second point, Simes does not meaningfully challenge the district court's exercise of discretion and, even if Simes has not waived the issue, the district court did not abuse its discretion. <u>See</u>, <u>e.g.</u>, <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). Consequently, Simes has no justiciable claim for damages against any defendant in this case.

-7-

### C. Declaratory and Injunctive Relief

Having concluded Simes had no prospect of obtaining damages from the commission or the officials, the district court found Simes' requests for declaratory and injunctive relief were moot. The district court again was correct.

All outstanding disciplinary proceedings (related to complaint Nos. 06-171, 05-112, and 05-123) against Simes have been definitively resolved by the Arkansas Supreme Court. See Simes II, 381 S.W.3d at 779; Simes I, 354 S.W.3d at 83-85. Even if Simes could prove these now settled state disciplinary proceedings were racially motivated, he could obtain no relief in this collateral federal case. Retrospective damages are barred by sovereign, quasi-judicial, and prosecutorial immunity, and the district court has no jurisdiction to offer prospective relief. Article III does not authorize federal courts to offer legal advice about hazy potentialities. See, e.g., O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). This case is "moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—[because] 'the issues presented are no longer "live" [and] the parties lack a legally cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 568 U.S. ___, ___, 133 S. Ct. 721, 726-27 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)).

Simes tries to wedge his case into the mootness exception for claims "capable of repetition, yet evading review," but his case does not fit. Sosna v. Iowa, 419 U.S. 393, 399-400 (1975). Even overlooking Simes' failure to analyze this exception in any meaningful way, see, e.g., Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (refusing to consider an argument on which the moving party "provide[d] no analysis of the relevant law or facts"), Simes offers no reason to expect the commission (now chaired by the Honorable Joyce Williams Warren, "the first black

female judge in Arkansas"[6]) will target Simes on the basis of race. Nor is there reason to think such an implausible action by the commission would evade Arkansas and Supreme Court judicial review.

To think otherwise would require us to assume (1) judicial complaints will be filed against Simes, (2) the commission's executive director—now no longer Stewart—will decide to pursue at least one of those complaints, (3) the executive director will do so on the basis of Simes' race, (4) the commission will determine further action is warranted, (5) the commission will make that determination on the basis of Simes' race, (6) the commission will recommend sanctions against Simes, (7) the commission will make that recommendation on the basis of Simes' race, and (8) the Arkansas Supreme Court will accept that recommendation.[7] Although Simes' past behavior might suggest new complaints against him are possible, the remaining assumptions are several "steps removed from reality"—"so remote and speculative that . . . there [is] a want of a subject matter on which any judgment of this Court could operate." Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 123 (1974) (quotation omitted).

And even if all of those assumptions proved true, the commission by its very existence is subject to judicial review, first by the Arkansas Supreme Court and then, on federal questions, by the U.S. Supreme Court. See 28 U.S.C. § 1257(a); Ark. Judicial Discipline & Disability Comm'n R. P. 12(C). Simes' argument that "the likelihood of the United States Supreme Court deigning to review such a case is so

---

[6]Biography of Judge Joyce Williams Warren, Ark. Judicial Discipline & Disability Comm'n, http://www.arkansas.gov/jddc/biocomm_2001.html (last visited October 28, 2013).

[7]Simes has never alleged the Arkansas Supreme Court, which indisputably found sanctions warranted against Simes in each case the commission brought against him in that court, acted based upon improper motives.

remote as to be nonexistent" demonstrates a misunderstanding of federalism. Out of respect for our country's fundamental federalist principles, federal judges—from Supreme Court Justices to Circuit Judges to District, Magistrate, and Bankruptcy Judges—whenever possible "avoid[] [the] invocation of federal supremacy over local laws." N.J. Payphone Ass'n v. Town of W.N.Y., 299 F.3d 235, 249 (3d Cir. 2002) (Alito, J., concurring). But when necessary, the Supreme Court has not hesitated to decide federal questions involving state judges, see, e.g., Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), and state disciplinary proceedings, see, e.g., Peel v. Att'y Registration & Disciplinary Comm'n of Ill., 496 U.S. 91 (1990).

## III.   CONCLUSION

Seeing no justiciable federal "Case[]" or "Controvers[y]," U.S. Const. art. III, § 2, we affirm the well-reasoned opinions and judgment of the district court.

_____